George K. MacPHERSON, Plaintiff, Appellee,

v.

BOSTON AND MAINE CORPORATION, Defendant, Appellant.

No. 7799.

United States Court of Appeals, First Circuit.

March 31, 1971.

John J. C. Herlihy, Boston, Mass., for defendant, appellant.

Robert P. Malone, Boston, Mass., for plaintiff, appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

ALDRICH, Chief Judge.

This is an FELA suit, 45 U.S.C. § 51 et seq., by MacPherson, a freight train conductor, against the Boston and Maine Corporation to recover damages for personal injury sustained when he slipped on a pile of snow. The sole question is whether the court erred in not directing a verdict for the defendant, which in turn raises the question whether there was any evidence that negligence of the defendant contributed to the accident. We recognize, of course, that this takes very little showing. *See* Barboza v. Texaco, Inc., 1 Cir., 1970, 434 F.2d 121. Plaintiff's evidence was as follows.

Plaintiff was employed on a local freight run, distributing and picking up cars on a single track line between Boston and the North Shore. As conductor he was in charge of the train. Whichever direction they were going, the engine would be at the east end, and the plaintiff, together with a flagman, would be in a caboose at the west end. On the day in question they were backing the train westerly towards the Loring Avenue crossing. This crossing was, like many others, unprotected by automatic signals. A company rule provided,

> "All moves over crossings must be stopped within 50 feet of the crossing and a member of the crew protect it."

This meant anywhere within the 50 feet. Plaintiff testified that when the train was proceeding forward and there was a crossing with an automatic signal it was customary to stop the engine at a stop post located a car length or about 40 feet from the crossing, and then to continue to within 20 feet of the crossing, when the automatic signal would be activated. Then, when the traffic had ceased on the crossing, the train would proceed. If, as at Loring Avenue, there was no automatic signal the engineer would proceed in the first instance to within "10, 15, 20 feet" of the crossing before stopping. A brakeman would then get off and protect the crossing.

When they were backing toward the Loring Avenue crossing the plaintiff would stand on the caboose rear platform with the flagman, who would be on the north side. The engineer would be on the north side of the cab. The plaintiff would direct the flagman. He, in turn, would give hand signals to the engineer indicating that they were three car lengths, then two, then one car length away from the stopping point, and then direct a stop, about 40 feet from the crossing. The flagman would get out and walk to the crossing.

On this day the crew was following its usual practice, which was not to cross Loring Avenue immediately, but to lock the train, walk to the crossing, and go to a restaurant. The date was February.

There had been four snowstorms. On the south side of the track, with which we are concerned, the railroad had plowed after the first three, and had left a pile of snow about 50 feet back from the crossing. After the fourth storm it had established a new pile, about 12 feet short of the first one. This pile ended 10 or 12 feet from the sidewalk, which in turn was 10 or 12 feet from the highway crossing. It was about 3 feet high, and had frozen. The week before, plaintiff had complained to a section foreman that this pile should not be there. Nothing had been done. Plaintiff caused the train to be stopped at the usual place, which placed the caboose platform between the two piles. He alighted on the south side and climbed over the second pile. In doing so he slipped and broke his leg.

The question is whether the defendant was negligent in leaving the second snow pile where it did. No specific attention was given at the trial as to the possible avoidability of doing so. We may wonder whether, once the first pile had been established, it would thereafter have been possible to have cleared the entire 40 feet back, since the two piles were only 12 feet apart. We will assume, however, in plaintiff's favor, that the jury could have found that this could have been managed. We will also assume in plaintiff's favor that he was excused from walking down the track itself, from which all snow had been removed.[1] However, we do not see why the defendant should have envisaged that the plaintiff would bring the train to a final stop at a point where he had to climb over the snow pile. While there was a safety custom of stopping 40 feet from the crossing, no rule, and no reason, have been suggested why plaintiff could not have started up again and brought the rear of the caboose to a stop in the space between the second snow pile and the crossing. The track was straight, and the engineer was accustomed to stopping on signal and spotting the rear end with precision.[2] Indeed, the only rules that were violated were rules violated by plaintiff himself. Defendant's safety rules instructed employees to be careful with respect to snow and ice, and to avoid obstructions where one could slip, trip or fall. Plaintiff well knew of this obstruction,[3] and having complete control as to which side of it the train should come to rest, there was no occasion for defendant to suppose that, for no purpose, he would walk over it instead of avoiding it. Having no reason to anticipate plaintiff's procedure, there was no negligence.

Reversed. Judgment for the defendant.

1. A rule forbad walking on the track within 10 feet of a stopped train. The obvious purpose of such a rule was to guard against someone starting the train unexpectedly. Since in this case the engineer and fireman had also left the train, there could be no one aboard to start it.

2. Q. "[T]here is no question that you, as you told us here, once he did bring it to a stop, you could have told him to move it back as little as six inches or as many feet as you wanted, isn't that true?"

A. "Right." Those of us with long memories, who have seen freight and passenger trains made up, could take judicial notice of the correctness of this concession that control of the train is elementary procedure.

3. Plaintiff's cases, which deal with a duty to warn, and a right to rely upon the defendant's taking customary precautions, are in no way relevant when the alleged defect was obvious and the plaintiff had both prior and present knowledge of it.