**William D. REARDON,
Plaintiff–Appellant,**

v.

**PEORIA & PEKIN UNION RAILWAY
COMPANY, Defendant–Appellee.**

No. 93–3499.

United States Court of Appeals,
Seventh Circuit.

Argued April 15, 1994.

Decided June 10, 1994.

Frank W. Petro (argued), E. Daniel Petro, Petro & Petro, Chicago, IL, for plaintiff-appellant.

James R. Morrison (argued), Westervelt, Johnson, Nicoll & Keller, Peoria, IL, for defendant-appellee.

Before EASTERBROOK and RIPPLE, Circuit Judges, and DILLIN, District Judge.*

EASTERBROOK, Circuit Judge.

A railroad must take precautions to protect its employees against foreseeable crimes committed by strangers. *Lillie v. Thompson*, 332 U.S. 459, 68 S.Ct. 140, 92 L.Ed. 73 (1947). A locomotive engineer, whose eye was put out by a pellet fired from a BB gun as the train rolled slowly near a public housing project, sued his employer under the Federal Employers' Liability Act, 45 U.S.C. §§ 51–60, contending that the railroad had not taken precautions such as posting guards to patrol the area, installing bullet-proof glass, or providing goggles.

The district court granted summary judgment for the railroad, concluding that it could not have foreseen an attack at the place where the shooting occurred. Although the record revealed that stones had been thrown at trains occasionally, such infrequent occurrences (fewer than one a year at the site in question) did not require the railroad to foresee and take precautions against random shootings, the court concluded. If the only question were whether the railroad had to post guards at the site or dispatch roving patrols, the district court's approach would be appropriate. The burden of taking such precautions would far exceed the losses anticipated at this site. To say that an injury is not "foreseeable" is simply to say that the probability of loss is low—to apply Learned Hand's famous formula for negligence, $B < PL$ (where $B$ is the burden of precautions, $L$ the loss if there is an

* Hon. S. Hugh Dillin, of the Southern District of Indiana, sitting by designation.

accident that the precautions could have prevented, and P the probability of an accident if the precautions are not taken). *United States v. Carroll Towing Co.*, 159 F.2d 169, 173 (2d Cir.1947). Our court has applied Judge Hand's approach in many kinds of negligence actions. See *McCarty v. Pheasant Run, Inc.*, 826 F.2d 1554, 1556 (7th Cir. 1987) (collecting applications outside the law of admiralty); see also *Archie v. Racine*, 847 F.2d 1211, 1219 (7th Cir.1988) (en banc) (treating *Carroll Towing* as the generic definition of negligence). Because the FELA does not hold the employer strictly liable, a conclusion that the burden of precautions would substantially exceed the loss such precautions could prevent forecloses the possibility of recovery. The FELA holds railroads to the prudent-person standard of care, the cornerstone of negligence law. *Ackley v. Chicago & Northwestern Transportation Co.*, 820 F.2d 263, 267 (8th Cir.1987). Ours therefore is a simple case—if the risk concerns this specific location, as the district court assumed. See also *Hartel v. Long Island R.R.*, 476 F.2d 462 (2d Cir.1973); *Burns v. Penn Central Co.*, 519 F.2d 512 (2d Cir.1975).

■ Hazards from projectiles are not confined to one stretch of track. Data compiled by the American Association of Railroads and proffered by the engineer show that shooting at trains is depressingly common. The district court excluded these data, but the fact that risks extend throughout a railroad's system does not need detailed proof. Hazards that accompany the train should be dealt with by precautions that accompany the train—not by guards at the Taft Homes in Peoria but by capital expenditures such as bulletproof glass. We need not decide, however, whether the district court should have received the Association's tabulations or whether they would create a material dispute about whether a railroad should have installed windows that resist penetration—for it is undisputed that federal regulations require,

49 C.F.R. § 223.9–11, and the locomotive involved in this case had, this equipment. Even the best safety precautions are of little value if employees defeat them, and this crew left the windows open.

Attempting to recover from the recognition that the railroad had taken the very precaution the complaint said it was supposed to take, plaintiff offers two justifications for leaving the window open: heat and fumes. It was a warm day, and the crew would have been uncomfortable in the cab, which was not air conditioned. Moreover, plaintiff implies, closing the window would have made the cab unsafe, given the exhaust fumes inside. The observation that the cab is more comfortable with the wind blowing finds its answer in plaintiff's own complaint: the area near the Taft Homes was *known* to be unsafe, he asserts. If so, it would have been prudent to close the window while traveling nearby, opening it again as the train rolled through the cornfields. Plaintiff does not contend that the railroad's negligence lay in making it possible to open the window; a window sealed shut surely would have presented greater hazards. Whatever elevation in temperature the crew would have endured during their short trip past the public housing would not have made the train an unsafe place to work. As for the claim that exhaust fumes in the cab would have made the locomotive unsafe with the window shut: no evidence of record suggests that exhaust fumes led the crew to prefer open windows.[†] Evidence shows that the crew left the windows closed during winter, which suggests that comfort rather than safety led the crew to leave the windows open in warm weather.

■ No evidence at all suggests that the train would have been *unsafe* with the windows closed. What is more, plaintiff did not present any such argument to the district court until after that court had entered sum-

---

† All three employees in the engine on the day of the shooting gave depositions. Faichney said that nothing about the cab made him uncomfortable. Ferguson testified that it was about 80° to 85° in the cab and that he did not notice any fumes. Plaintiff Reardon testified that the cab was "warm and humid" and did not mention fumes. Only eight months later, as part of a last-

ditch effort to stave off summary judgment, did Reardon file an affidavit stating that "heat and fumes" led the crew to leave the window open. The idea that these were *exhaust* fumes, rather than the ordinary smell of diesel oil and other volatile substances around an engine, appears to be the invention of appellate counsel.

mary judgment, and it is accordingly not available here. Regrettable though the injury is, this record shows that the railroad provided the means of its prevention. The FELA does not make the railroad an insurer against injuries, and it does not require the railroad to provide precautions that are impossible to defeat. *MacPherson v. Boston & Maine Corp.,* 439 F.2d 1089 (1st Cir.1971); *McGivern v. Northern Pacific Ry.,* 132 F.2d 213, 219 (8th Cir.1942). There is accordingly no material dispute requiring a trial.

AFFIRMED.