Clarence J. WILLIAMS,
Plaintiff–Appellant,

v.

NATIONAL RAILROAD PASSENGER CORPORATION, Defendant–Appellee.

No. 97–4211.

United States Court of Appeals,
Seventh Circuit.

Argued Aug. 5, 1998.

Decided Nov. 25, 1998.

Keith A. Queensen (Argued), Michael L. Weiner, Yaeger, Jungbauer, Barczak & Roe, Minneapolis, MN, John S. Bishof, Jr., Chicago, IL, for Plaintiff–Appellant.

Hugh C. Griffin, Mary E. Bennett, Leslie J. Rosen (Argued), Lord, Bissell & Brook, Chicago, IL, for Defendant–Appellee.

Before BAUER, WOOD, JR., and EASTERBROOK, Circuit Judges.

HARLINGTON WOOD, JR., Circuit Judge.

After a sliding door on a moving train slammed shut and struck him in the head, Clarence Williams, an assistant conductor for the National Railroad Passenger Corporation (commonly known as Amtrak) sued the railway under the Federal Employer's Liability Act, 45 U.S.C. §§ 51–60. Williams alleged that this accident resulted from Amtrak's negligence in failing to provide a reasonably safe workplace. The district court found that Williams' evidence was insufficient to show that Amtrak knew or should have known of the allegedly defective door and granted summary judgment in favor of Amtrak. We affirm.

## I.

On September 17, 1994, Clarence Williams was working aboard the Amtrak train bound for Chicago from St. Louis. Having worked this route at least fifty previous times, he was an old hand at assisting passengers with their carry-on baggage. His job involved helping passengers board and disembark from the train and moving luggage from the vestibule of the train into the connecting coach cars. When the train pulled out of the station in Alton, Illinois, Williams prepared to help passengers move their belongings. To keep the vestibule door open, Williams, as he regularly did on such trips, set a switch located above the door to lock the door open. Straddling the doorway, Williams bent down and leaned forward to pick up a bag. Suddenly, the door closed, striking him on top of the head. Williams recalled feeling dizzy but otherwise alright. A short while later, however, he fainted and collapsed to the floor.

Upon arriving in Chicago, Williams was taken to the emergency room at St. Francis Hospital in Blue Island and administered a number of tests. After these tests ruled out various causes of Williams' syncope, or loss of consciousness, the examining physician concluded that the train episode must have been precipitated by a trauma to the head.

In December 1996, Williams filed this action under the FELA, a statute that permits a railroad worker to recover for an "injury ... resulting ... from" his employer's "negligence." 45 U.S.C. § 51. Williams alleged that Amtrak was negligent because it failed to (1) provide him with a reasonably safe place to work; (2) provide adequate equipment; and (3) devise or implement a reasonable safety or accident prevention program. The district court set a discovery cutoff date of August 21, 1997. But two days before the cutoff, Williams asked to extend the discovery period so that he could conduct a "finding expedition" as to whether there was any defect in any other cars on the train. The court denied the request. Amtrak then moved for summary judgment. The district court granted the motion, holding that Williams failed to establish that the railroad breached its duty to maintain a reasonably safe workplace. This appeal followed.

## II.

We review de novo a district court's decision to grant summary judgment. *McGinn v. Burlington Northern R.R. Co.*, 102 F.3d 295, 298 (7th Cir.1996). Federal Rule of Civil Procedure 56(c) mandates the entry of summary judgment whenever there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In considering whether any genuine issues of material fact exist, we view the record and all reasonable inferences in the light most favorable to the nonmoving party. *Id.*

The FELA dates from the heyday of American steam railroads. Enacted in 1908, the statute provides a broad, federal tort remedy for railroad workers injured on the job. The Act abolished a number of traditional defenses to liability, including the fellow-servant rule, contributory negligence, and assumption of risk. *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 542, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994); *Lancaster v. Norfolk & Western Ry. Co.*, 773 F.2d 807, 817 (7th Cir.1985). Although the Act required railroad workers to prove negligence, the Supreme Court relaxed the standard by holding that the proof needed to get a case to a jury in a FELA case is merely whether " 'employer negligence played any part, even the slightest, in producing the injury.' " *Gottshall*, 512 U.S. at 543, 114 S.Ct. 2396 (quoting *Rogers v. Missouri Pacific R. Co.*, 352 U.S. 500, 506, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957)). A plaintiff's burden in a FELA action is therefore significantly lighter than it would be in an ordinary negligence case. *See Harbin v. Burlington Northern Ry. Co.*, 921 F.2d 129, 132 (7th Cir.1990) (noting examples of FELA actions submitted to jury based only upon "evidence scarcely more substantial than pigeon bone broth"). Courts have interpreted the Act's language liberally in light of its humanitarian purposes. *Metro–North Commuter R. Co. v. Buckley*, 521 U.S. 424, ——, 117 S.Ct. 2113, 2117, 138 L.Ed.2d 560 (1997).

Still, the FELA "is not an insurance statute." *Gottshall*, 512 U.S. at 554, 114 S.Ct. 2396. A FELA plaintiff who fails to produce even the slightest evidence of negli-

gence will lose at summary judgment. *McGinn*, 102 F.3d at 301. Specifically, the FELA plaintiff must offer evidence proving the common law elements of negligence, including duty, breach, foreseeability, and causation. *Fulk v. Illinois Cent. R.R. Co.*, 22 F.3d 120, 124 (7th Cir.1994). The FELA holds railroads to a prudent-person standard of care, *Reardon v. Peoria & Pekin Union Ry. Co.*, 26 F.3d 52, 54 (7th Cir.1994), and a plaintiff who wishes to demonstrate that a railroad breached its duty must show circumstances that "a reasonable person would foresee as creating a potential for harm." *McGinn*, 102 F.3d at 300.

■ The district court granted summary judgment for Amtrak because Williams presented insufficient evidence to show that the railroad breached its duty to maintain a reasonably safe workplace. The court noted that Amtrak's duty was limited to that which could reasonably have been foreseen, and Williams had not shown that Amtrak knew of the allegedly defective door, or that it could have discovered a defect upon inspection. Williams contends that this ruling improperly removed the issue of foreseeability of harm from jury consideration. It is the jury, he insists, that must decide whether Amtrak did all that was reasonably required to discover and correct the defect in the sliding door.

Although reasonable foreseeability of harm is an essential ingredient of FELA negligence, *Gallick v. Baltimore & O. R. Co.*, 372 U.S. 108, 117, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963), its meaning remains somewhat elusive and abstract. The Supreme Court alluded to the concept of foreseeability in *Gallick*. Plaintiff Gallick, a railroad employee, was working near a pool of stagnant water infested with vermin and insects when he received an insect bite that became infected and ultimately necessitated amputation of both his legs. The Court reinstated the jury verdict in favor of Gallick, and in so doing, approved a jury instruction that "defendant's duties are measured by what is reasonably foreseeable under like circumstances—by what in the light of the facts then known, should or could reasonably have been anticipated." *Id.* at 118, 83 S.Ct. 659. The Court further explained that a valid finding of foreseeability did not require that an incident similar to

the insect bite infection had occurred previously. *Id.* at 121, 83 S.Ct. 659.

■ Our court has yet to analyze the concept of reasonable foreseeability in a FELA action, though we consistently have declined to infer negligence when a plaintiff fails to produce any evidence suggesting that the employer played even the slightest role in bringing about the injury. *McGinn*, 102 F.3d at 301 (crew member tripped over his own suitcase in a darkened engine cab); *Lisek v. Norfolk & Western Ry. Co.*, 30 F.3d 823, 832–34 (7th Cir.1994) (worker fell and injured his knee while attempting to align the drawbar on a rail car); *Deutsch v. Burlington Northern R.R. Co.*, 983 F.2d 741, 744 (7th Cir.1992) (railroad brakeman slipped on a ladder after adjusting the handbrake on top of a rail car); *see also Reardon*, 26 F.3d at 53–54 (under Learned Hand's formula for negligence, an injury is not "foreseeable" if the costs of precautions prohibitively exceed the expected costs of a likely accident).

Most of the other circuits equate foreseeability with notice, either actual or constructive. Thus, an employer is not liable if it has no reasonable way of knowing that a potential hazard exists. *See, e.g., Gadsden v. Port Authority Trans–Hudson Corp.*, 140 F.3d 207, 209 (2d Cir.1998) ("[t]his is not a case of a hidden defect; a jury could find that [the railroad] had actual or constructive knowledge of the location of the handholds and footboards," the lack of which rendered the workplace unsafe); *Brown v. CSX Transp., Inc.*, 18 F.3d 245, 250 (4th Cir.1994) ("Because CSX had neither notice of prior extraordinary noise incidents nor notice that a defect existed in the retarder, we hold that the [loud shrill noise which allegedly damaged plaintiff's hearing] was not reasonably foreseeable by CSX."); *Sinclair v. Long Island R.R.*, 985 F.2d 74, 77 (2d Cir.1993) ("the essential element of reasonable foreseeability in FELA actions requires proof of actual or constructive notice to the employer of the defective condition that caused the injury") (citation omitted); *Peyton v. St. Louis Southwestern Ry. Co.*, 962 F.2d 832, 833 (8th Cir. 1992) ("an employer is not liable if it had no reasonable way of knowing about the hazard that caused the employee's injury"); *Moody*

*v. Boston & Maine Corp.*, 921 F.2d 1, 3 (1st Cir.1990) (plaintiff widow "failed to make a showing of foreseeability" because her husband who died of a heart attack never informed the railroad "of his deteriorating physical condition or complained about the interruptions to his rest and increased job stress."); *Nivens v. St. Louis Southwestern Ry. Co.*, 425 F.2d 114, 118 (5th Cir.1970) ("[A]ctual notice of an unsafe condition is unnecessary [to show foreseeability under the FELA]. Constructive notice may suffice.").

Williams disagrees that a railroad must have had actual or at least constructive notice of a dangerous condition to be liable for damages. Citing *Webb v. Illinois Cent. R.R. Co.*, 352 U.S. 512, 77 S.Ct. 451, 1 L.Ed.2d 503 (1957), Williams maintains that the standard of foreseeability is "so liberal" under the FELA that an injured worker need not prove that the railroad had "even constructive notice" of the defect where it controlled the premises at the time of the accident. Williams misreads *Webb*. In that case, the employee was walking alongside a railroad track on a cinder roadbed when he slipped on an unnoticed and unusually large cinder and fell, injuring his kneecap. *Webb*, 352 U.S. at 513, 77 S.Ct. 451. A jury was permitted to find that the railroad should be charged with notice of the cinder. *Id.* The Supreme Court held that the employee had introduced enough probative facts to show that the railroad negligently had caused the large cinder to be in the roadbed and had failed to use proper care to discover and remove it. *Id.* Furthermore, contrary to Williams' suggestion, the Court never reached the issue of constructive notice because the railroad already had "conceded that the [cinder] in the roadbed created a hazardous condition. . . ." *Id.* *Webb* does not alter our view that a FELA plaintiff injured by a defective condition cannot recover damages without showing that the employer had actual or constructive notice of the condition.

The parties agree that Amtrak had no actual knowledge of the allegedly defective door. As for constructive knowledge, Williams has not provided any evidence showing that the door had a defect which Amtrak could have discovered upon inspection. Williams submitted his own deposition testimony describing the circumstances of the accident. However, he doesn't explain why the door closed, let alone how the door's closing can be traced to Amtrak's negligence. Williams presented nothing to suggest that the door was defective or in need of repair, or that Amtrak had any prior notice of problems with the door. Although Amtrak's duty to provide a safe workplace contemplates reasonable inspections of equipment and appliances, Williams had the burden of showing that Amtrak could have discovered a defect with the door and remedied the situation. *Brown*, 18 F.3d at 249–50; *Peyton*, 962 F.2d at 834. This burden he did not meet.

■ Nor can Williams support a negligence claim with his remaining evidence. His medical records elaborate upon his physical condition and his loss of consciousness, but they do not reveal how the accident can be ascribed to Amtrak's negligence in maintaining a safe workplace. Similarly, although an affidavit submitted by one of the train conductors asserts that Williams "passed out in the lounge car," this testimony provides no further information about the alleged accident or Amtrak's role in it. Moreover, the conductor's injury report stating that Williams "blacked out" falls far short of linking Williams' injury to any negligence by Amtrak.

■ One final matter requires our attention. Williams argues that the district court prematurely granted summary judgment because he did not have the benefit of sufficient discovery to confirm that his injury actually occurred in the car that he initially identified as the site of the accident. Just prior to summary judgment, Williams had begun to suspect that he had misidentified the car and that the accident might have involved one of the three other cars. According to Williams, the court based its decision on a "mistaken impression" that Amtrak had complied with his requests for discovery of train maintenance records concerning the doors on all of the train cars. If Williams lacked the opportunity to discover information essential to opposing summary judgment, he should have provided the court with an affidavit under Federal Rule of Civil Procedure 56(f), asking for more time before the court ruled on the

summary judgment motion. *Karazanos v. Madison Two Assocs.*, 147 F.3d 624, 626 (7th Cir.1998); *Brown v. Ameritech Corp.*, 128 F.3d 605, 608 (7th Cir.1997). He never did so. On this record, therefore, summary judgment properly was granted.

AFFIRMED.