[No. 67328-4. En Banc.]

Argued June 15, 1999.    Decided September 2, 1999.

RAYMOND L. SEEBERGER, *Respondent*, v. BURLINGTON NORTHERN RAILROAD COMPANY, *Petitioner.*

*Kroschel, Gibson, Kinerk & Reeve* by *David M. Reeve*, for petitioner.

*Mary E. Van Gemert*; and *Mitchell, Lang & Smith* by *Thomas M. Christ*, for respondent.

*Lane Powell Spears Lubersky* by *Timothy D. Wackerbarth* and *Michael B. King*; and *Louis P. Warchot* and *Daniel Saphire*, on behalf of Association of American Railroads, amicus curiae.

TALMADGE, J. — We must decide in this case if an injured railroad worker has adduced sufficient evidence of his employer's negligence to take his case under 45 U.S.C. § 51, the Federal Employers' Liability Act (FELA), to the jury. Under the very liberal test articulated in federal case law, which requires the worker provide only slight evidence his injuries were foreseeably the result of the railroad's breach of its duty to provide him a safe tool in his workplace, we hold the worker produced sufficient evidence to take his FELA case to a jury. Consequently, we reverse the trial court's summary judgment in favor of the railroad.

## ISSUE

Did a railroad worker produce sufficient evidence upon the railroad's motion for summary judgment to create a fact question for a jury to decide as to whether the railroad breached its duty under FELA to provide him a safe workplace by giving him a tool it could reasonably have foreseen was unsafe for the task the worker performed?

## FACTS

Raymond Seeberger, a "carman" for Burlington Northern Railroad Company (BN) at BN's Tacoma yard, had been employed in that capacity since 1956. Among other functions, a railroad carman inspects loads carried in freight cars. One day Seeberger was told to check on a grain car leaking grain onto the tracks. He went to investigate and found a car filled with grain leaking because a horizontal

door in the bottom of the car was slightly ajar and needed to be closed more tightly.

To close the door, a carman had to turn a shaft that protruded from beneath the car. At the end of the shaft was a drumhead with elliptical sockets for insertion of a lever to aid in turning the shaft. Instead of a tool used specifically for the task of turning the drumhead, Seeberger used a wrecking bar, a long bar that is pointed on one end and flat on the other used for general work around a rail yard, to turn the drumhead. Seeberger inserted the pointed end of the wrecking bar into one of the holes in the drumhead and pushed down on it in an attempt to close the door.

The pointed end of the wrecking bar did not fit snugly into the hole because the hole was bigger than the point. Seeberger testified at his deposition: "I put the bar in the hole and I leaned on it to put the pressure on it and the bar slipped out of the hole and I fell against the side of the car." Clerk's Papers at 123. He fell to his knees and smashed his shoulder into the side of the freight car. He testified the bar slipped out because the hole was too big, the bar was too small, and the point did not fit in the hole.

Workers for grain companies have a specific tool that may be inserted snugly into the drumhead to turn the shaft. Other BN employees used this tool. Other BN employees also used a power tool to turn the shaft on grain cars, but the power tool was quite large and cumbersome.

The injury to Seeberger's shoulder eventually required surgery and "months and months and months" of physical therapy. Clerk's Papers at 129. Seeberger has residual stiffness in his shoulder and cannot bowl or throw a baseball more than 10 feet.

Seeberger sued BN in the Pierce County Superior Court under FELA, claiming BN had been negligent in failing to provide him with a proper tool. BN moved for summary judgment, arguing Seeberger had used a wrecking bar safely for opening and closing freight car doors for 20 years in exactly the same way he used the bar on the day he was

injured. Thus, BN contends, it could not have foreseen the harm Seeberger suffered and therefore was not negligent. Seeberger responded with evidence of the specific tool and a power tool designed especially for moving the bottom door of a freight car. Nevertheless, the trial court concluded there were no factual issues for trial and granted summary judgment for BN, dismissing Seeberger's case. Seeberger appealed. Division Two of the Court of Appeals, in a brief published opinion, reversed and remanded for further proceedings, holding a jury could conclude BN was "slightly negligent" in failing to provide Seeberger with a safer tool. *Seeberger v. Burlington N. R.R.*, 91 Wn. App. 865, 868, 960 P.2d 461 (1998). We granted review.

## ANALYSIS

The FELA states, in pertinent part:

> Every common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed by such carrier . . . resulting in whole or in part from the negligence of any of the [employees] . . . or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery . . . or other equipment.

45 U.S.C. § 51. Federal law controls the FELA's application:

> By the federal Employers' Liability Act, Congress took possession of the field of employers' liability to employees in interstate transportation by rail; and all state laws upon that subject were superseded. . . . The kind or amount of evidence required to establish it is not subject to the control of the several states.

*Chicago M. & St. P. Ry. v. Coogan*, 271 U.S. 472, 474, 46 S. Ct. 564, 70 L. Ed. 1041 (1926). *Accord Adair v. Northern Pac. Ry.*, 64 Wn.2d 539, 541, 392 P.2d 830 (1964) (federal law in FELA cases controls questions of sufficiency of evidence); *Hilliard v. Clifford*, 134 Wash. 590, 594, 236 P. 108 (1925) (FELA preempts state workers' compensation law). A succinct yet thorough discussion of FELA history and

law appears in a very recent case from the United States Court of Appeals for the Seventh Circuit:

The FELA dates from the heyday of American steam railroads. Enacted in 1908, the statute provides a broad, federal tort remedy for railroad workers injured on the job. The Act abolished a number of traditional defenses to liability, including the fellow-servant rule, contributory negligence, and assumption of risk. *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 542, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994); *Lancaster v. Norfolk & Western Ry. Co.*, 773 F.2d 807, 817 (7th Cir.1985). Although the Act required railroad workers to prove negligence, the Supreme Court relaxed the standard by holding that the proof needed to get a case to a jury in a FELA case is merely whether " 'employer negligence played any part, even the slightest, in producing the injury.' " *Gottshall*, 512 U.S. at 543, 114 S.Ct. 2396 (quoting *Rogers v. Missouri Pacific R. Co.*, 352 U.S. 500, 506, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957)). A plaintiff's burden in a FELA action is therefore significantly lighter than it would be in an ordinary negligence case. *See Harbin v. Burlington Northern Ry. Co.*, 921 F.2d 129, 132 (7th Cir.1990) (noting examples of FELA actions submitted to jury based only upon "evidence scarcely more substantial than pigeon bone broth"). Courts have interpreted the Act's language liberally in light of its humanitarian purposes. *Metro-North Commuter R. Co. v. Buckley*, 521 U.S. 424, [429], 117 S.Ct. 2113, 2117, 138 L.Ed.2d 560 (1997).

Still, the FELA "is not an insurance statute." *Gottshall*, 512 U.S. at 554, 114 S.Ct. 2396. A FELA plaintiff who fails to produce even the slightest evidence of negligence will lose at summary judgment. *McGinn [v. Burlington N. R.R.]*, 102 F.3d [295, 301 (7th Cir. 1996)]. Specifically, the FELA plaintiff must offer evidence proving the common law elements of negligence, including duty, breach, foreseeability, and causation. *Fulk v. Illinois Cent. R.R. Co.*, 22 F.3d 120, 124 (7th Cir.)[, *cert. denied*, 513 U.S. 870, 115 S. Ct. 193, 130 L. Ed. 2d 125 (1994)]. The FELA holds railroads to a prudent-person standard of care, *Reardon v. Peoria & Pekin Union Ry. Co.*, 26 F.3d 52, 54 (7th Cir.1994), and a plaintiff who wishes to demonstrate that a railroad breached its duty must show circumstances that "a

reasonable person would foresee as creating a potential for harm." *McGinn*, 102 F.3d at 300.

*Williams ʋ. National R.R. Passenger Corp.*, 161 F.3d 1059, 1061-62 (7th Cir. 1998).

In discussing the elements of a FELA case and the test for taking a FELA case to the jury, the Court of Appeals below concluded a jury could find BN "slightly negligent." *Seeberger*, 91 Wn. App. at 868. The term "slightly negligent" is imprecise and does not state the law correctly. For instance, in considering whether an employee under the FELA has only a "slight" duty of care to prevent injury to himself, the court in *Fashauer v. New Jersey Transit Rail Operations, Inc.*, 57 F.3d 1269, 1283 (3d Cir. 1995), said, "It seems to us that someone acts either with due care or without due care." That is, the duty is binary: it either exists or it does not. It cannot exist only "slightly." Similarly, BN was either negligent or not negligent with respect to Seeberger; it could not have been "slightly" negligent.

Confusion on this point appears to have arisen from the following statement in *Rogers v. Missouri Pac. R.R.*, 352 U.S. 500, 506, 77 S. Ct. 443, 1 L. Ed. 2d 493 (1957): "Under [the FELA] the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." The Supreme Court undoubtedly meant to refer to a "breach of a duty owed by the employer to the employee," rather than "employer negligence." As the Supreme Court itself later observed, this statement does not speak of a relaxed standard of negligence, but rather a relaxed standard of causation. *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 543, 114 S. Ct. 2396, 129 L. Ed. 2d 427 (1994). *Accord Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 335 (5th Cir. 1997) ("the Supreme Court used the term 'slightest' to describe the reduced standard of causation between the employer's negligence and the employee's injury"). This

relaxed standard of evidence applies to breach of duty as well.[1]

■ ■ Synthesizing the federal FELA cases, particularly *Rogers* and *Gottshall*, we hold a railroad worker must establish all of the traditional elements of a negligence case against a railroad: duty, breach of duty, proximate causation, and damages. However, in determining whether the worker's negligence case survives a motion for summary judgment, a significantly reduced evidentiary standard applies in FELA cases. If there is only the slightest evidence of breach or causation, the worker's case must go to the jury. *Accord Adair*, 64 Wn.2d at 541-42 (citing *Rogers*); *Moore v. Union Pac. R.R.*, 83 Wn. App. 112, 116, 920 P.2d 616 (1996) ("FELA standard much like the 'scintilla rule' "); *Lessee v. Union Pac. R.R.*, 38 Wn. App. 802, 805, 690 P.2d 596 (1984) (relaxed burden for proving proximate cause under the FELA).

■ In the present case, duty, causation, and damages are not at issue. The question of whether a duty exists is a question of law for courts to address. *Bernethy v. Walt Failor's, Inc.*, 97 Wn.2d 929, 933, 653 P.2d 280 (1982). Here, the FELA imposed the duty on BN to provide Seeberger a safe workplace. Proximate causation is also not an issue in this case. It is abundantly clear that if indeed the wrecking bar Seeberger employed was the wrong tool for the job, it was the slippage of the bar that caused Seeberger's shoulder injury. There is not a hint in the facts of an intervening or superseding cause; nor does BN argue as much. Seeberger plainly suffered injuries.

■ We are left with the scope of the statutory duty BN owed Seeberger to provide him with safe equipment in his workplace. "[R]easonable foreseeability of harm is an essential ingredient of Federal Employers' Liability Act negligence." *Gallick v. Baltimore & Ohio R.R.*, 372 U.S.

---

[1]This test is more generous than the normal standard for CR 56 review where the "facts and reasonable inferences from the facts are considered in the light most favorable to the nonmoving party." *Bishop v. Miche*, 137 Wn.2d 518, 523, 973 P.2d 465 (1999).

108, 117, 83 S. Ct. 659, 9 L. Ed. 2d 618 (1963). "The concept of foreseeability limits the scope of the duty owed." *Christen v. Lee*, 113 Wn.2d 479, 492, 780 P.2d 1307 (1989); *accord Schooley v. Pinch's Deli Mkt., Inc.*, 134 Wn.2d 468, 951 P.2d 749 (1998). In effect, as we indicated in *Rikstad v. Holmberg*, 76 Wn.2d 265, 269, 456 P.2d 355 (1969), we must determine if BN's providing the wrecking bar to Seeberger "is within the ambit of the hazards covered by the duty imposed upon defendant." BN breached its duty if the harm Seeberger suffered was foreseeable.

Ordinarily, foreseeability is a question of fact for the jury unless the circumstances of the injury "are so highly extraordinary or improbable as to be wholly beyond the range of expectability." *McLeod v. Grant County Sch. Dist. No. 128*, 42 Wn.2d 316, 323, 255 P.2d 360 (1953); *accord Reynolds v. Hicks*, 134 Wn.2d 491, 951 P.2d 761 (1998). "[T]he harm sustained must be reasonably perceived as being within the general field of danger covered by the specific duty owed by the defendant." *Maltman v. Sauer*, 84 Wn.2d 975, 981, 530 P.2d 254 (1975).

BN argues there was no evidence of foreseeability because Seeberger had been using the wrecking bar for 20 years without injury to close the doors under grain cars, and Seeberger himself testified he perceived no danger in what he was doing. Pet. for Review at 19-20. But this evidence is not necessarily helpful to BN. The test of foreseeability is an objective test, and whether Seeberger himself foresaw the risk is not the issue. *Ayers v. Johnson & Johnson Baby Prods. Co.*, 117 Wn.2d 747, 764, 818 P.2d 1337 (1991) ("[F]oreseeability is a matter of what the actor knew or should have known under the circumstances; it turns on what a reasonable person would have anticipated.").

In analyzing the "slightest evidence" of foreseeability, we are guided by the public policy underlying the FELA. In order to further the humanitarian purposes of the FELA, "Congress vested the power of decision in these actions exclusively in the jury in all but the infrequent cases where

fair-minded jurors cannot honestly differ whether the fault of the employer played any part in the employee's injury." *Rogers*, 352 U.S. at 510. The right to a jury trial "is part and parcel of the remedy afforded railroad workers under the Employers Liability Act." *Bailey v. Central Vt. Ry.*, 319 U.S. 350, 354, 63 S. Ct. 1062, 87 L. Ed. 1444 (1943). Stemming from Congress's favoring of jury trials for FELA plaintiffs, not much more than a scintilla of evidence is required to support a negligence claim in the Court of Appeals for the Sixth Circuit. *Aparicio v. Norfolk & W. Ry.*, 84 F.3d 803, 810 (6th Cir. 1996). Likewise, in the Court of Appeals for the Seventh Circuit, the FELA plaintiff's burden is significantly lighter than it would be in an ordinary negligence case. *Williams v. National R.R. Passenger Corp.*, 161 F.3d 1059, 1061 (7th Cir. 1998).

Seeberger easily met his relaxed burden to produce evidence that his injury was objectively foreseeable. The tool he used to perform the turning of the shaft, a wrecking bar, was not specifically adjusted to the sockets in the drumhead of the shaft. It was loose. The pointed end of the bar could move as well. It is not hard to envision the tool could give way when a man placed his full strength against it to shut the grain car door. Moreover, Seeberger introduced deposition testimony from his BN supervisor who testified BN used other, safer tools to perform the task Seeberger was performing when he was injured. Clerk's Papers at 137; Resp't's Supplemental Br. at 8. The existence of these other, safer tools does not in and of itself establish BN's negligence. It does, however, create a genuine issue of material fact as to whether BN could have foreseen the harm Seeberger suffered from use of the wrecking bar.

In summary, whether BN breached its duty to provide Seeberger with a safe tool in his workplace, as it had a statutory duty to do, is a matter of foreseeability, which is

a jury question. The Court of Appeals correctly reversed the summary judgment in favor of BN.[2]

## CONCLUSION

The FELA imposes on railroad employers a duty to provide safe workplaces generally and safe tools specifically for railroad employees. Here, whether BN breached its duty to Seeberger depends on whether the injury Seeberger suffered using the wrecking bar was foreseeable. Foreseeability under these circumstances is a question for the jury under the relaxed evidentiary standard employed in FELA cases. We affirm the Court of Appeals and remand this case to the Pierce County Superior Court for trial.

DURHAM, SMITH, JOHNSON, ALEXANDER, SANDERS, and IRELAND, JJ., concur.

MADSEN, J. (dissenting) — To establish the scope of a duty in a negligence case, a plaintiff must demonstrate the foreseeability of the risk of harm. The question in this case is not, as the majority asserts, whether Burlington Northern (BN) breached its duty of care by failing to foresee the injury, but rather whether the injury was foreseeable at all. Under the Federal Employers' Liability Act (FELA), an employer has a duty to provide the employee with a reasonably safe tool or appliance with which to work. The majority ignores the federal case law which holds that the existence of a safer tool is not evidence that the tool used is unsafe, and is thus not evidence of foreseeability. Because Seeberger failed to show that the wrecking bar he used was unsafe, summary judgment for BN was appropriate. While the majority correctly points out that the Court of Appeals misconstrued the case law to allow a finding of "slightly negligent," the majority itself goes on to apply a substan-

---

[2]Our determination that Seeberger may present his FELA case to a jury does not constitute a commentary on the merits of his case or a determination that BN is barred from contending Seeberger's conduct could be the basis for a defense of comparative fault.

tially similar standard. Majority at 821. The majority couches its reasoning in the public policy and humanitarian purposes behind FELA, but in the end would allow this policy to compensate for a total lack of evidence of foreseeability. Because this is contrary to the clear rule established in FELA case law, I dissent.

The trial court properly granted BN's motion for summary judgment because there was no material issue of fact as to the foreseeability of the injury and the safeness of the wrecking bar.[3] Clerk's Papers (CP) at 179-82. A summary judgment motion requires that the moving party show the absence of an issue of material fact. *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989). This burden can be met by pointing out to the trial court the lack of evidence proving an element of the plaintiff's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). BN argued that Seeberger had presented no evidence as to the foreseeability of the injury. Indeed, there was no evidence that the use of the wrecking bar was unsafe, or that anyone could have foreseen that it was unsafe. The only evidence Seeberger provided was that an alternative and safer tool existed for this task, and that BN knowingly failed to provide it to him.

However, while a railroad has a duty to provide reasonably safe and suitable tools, *Ragsdell v. Southern Pac. Transp. Co.*, 688 F.2d 1281, 1283 (9th Cir. 1982), it is well settled that "in FELA cases an employer is neither required to furnish the employee with the latest, best or most perfect appliance with which to work, nor to discard standard appliances already in use that are reasonably safe and suitable, even though later improvements have been discovered." *Soto v. Southern Pac. Transp. Co.*, 514 F. Supp 1, 4 (W.D. Tex. 1979), *aff'd*, 644 F.2d 1147 (1981). *Accord Baltimore & Ohio R.R. v. Groeger*, 266 U.S. 521, 45 S. Ct.

---

[3]Burlington Northern moved for summary judgment on two grounds, one of which was the absence of a material issue of fact on the foreseeability of the harm. Alternatively, BN argued that Seeberger's negligence claim was speculative. The trial court did not explain on what basis it granted summary judgment, however both are strong arguments.

169, 69 L. Ed. 419 (1925); *Atlantic Coast Line R.R. v. Dixon*, 189 F.2d 525 (5th Cir. 1951); *Stillman v. Norfolk & W. Ry.*, 811 F.2d 834 (4th Cir. 1987). The existence of a safer or more suitable tool is irrelevant if it is not shown that the tool used is unsafe. *Soto*, 514 F. Supp. at 4. The question before the jury would not have been whether the existence of an alternative tool created a duty to provide it, but whether the tool actually used was reasonably safe. *Stillman*, 811 F.2d at 838. Seeberger presented no evidence that the tool was unsafe.

The majority is correct in asserting that the quantum of evidence needed to overcome a motion for summary judgment is substantially lower in a FELA case than in a normal negligence case. The plaintiff in a FELA case must present more than a scintilla of evidence on each element of the case, but not much more. *Aparicio v. Norfolk & W. Ry.*, 84 F.3d 803, 810 (6th Cir. 1996). Even slight evidence will suffice. *Harbin v. Burlington N. R.R.*, 921 F.2d 129, 131 (7th Cir. 1990). Regardless of what the quantum is, however, Seeberger failed to meet it. He presented no evidence that the wrecking bar was unsafe—not even a scintilla.[4]

Seeberger argued primarily that because a safer tool existed for the task, BN should have foreseen the injury. That argument misstated the law. Seeberger also argued that because the bar did not fit snugly in the hole it was not a safe tool for the job. Resp't's Supplemental Br. at 9. The trial court considered Seeberger's testimony that the bar was loose in the socket, and rightly concluded that this

---

[4]Even if the existence of a safer and more suitable tool is relevant to the foreseeability of the injury, it is not clear that in this case the alternative tools were safer or more suitable for the task. Seeberger presented evidence of the existence of two alternative tools for this job. One was a power tool which was suitable for use only at an industry plant because of its size. Seeberger was working from a road truck in the field, and it would not have been possible for him to use such a power tool. The second type of tool was a curved bar that fit more snugly into the elliptical sockets than did the straight and pointed bar. After the incident, Seeberger requested that BN provide these tools. BN complied, but not because the curved bars were safer than the wrecking bars. Seeberger's supervisor testified that he did not think that the curved bars were safer than the straight bars. CP at 137.

was not evidence that would enable a jury to determine that the bar was unsafe. Seeberger did not testify that this loose fit was the cause of the slip, but merely that it could have been the cause. Moreover, no one, not even Seeberger, concluded that the loose fit made the bar an unsafe tool for the job. There was no evidence to that effect.[5]

The trial court's decision to grant summary judgment is consistent with other FELA cases. For example, the court in *McGinn v. Burlington Northern Railroad*, 102 F.3d 295 (7th Cir. 1996), upheld a grant of summary judgment for the defendant because of the lack of evidence showing the foreseeability of the harm. In that case, a railroad brakeman was injured when he tripped over his own baggage in a dark cabin car. He alleged that the railroad was negligent in not providing a luggage rack. The court upheld the finding that there was no evidence that the railroad could foresee that the lack of a luggage rack would create a hazard. *Id.* at 301. The court noted that although there is a lenient standard for surviving summary judgment in a FELA case, "[l]eniency has its limits. The plaintiff must still present *some* evidence of negligence." *Id.* at 300.

In *Williams v. National Railroad Passenger Corp.*, 161 F.3d 1059 (7th Cir. 1998), a conductor sued under FELA when a sliding door failed to stay locked open and slammed on his head. The court upheld a grant of summary judgment for the railroad because the plaintiff failed to show that the injury was foreseeable. The court noted that FELA is not an insurance statute, and that a plaintiff must offer evidence proving the common law elements of negligence. *Id.* at 1061-62. A plaintiff who seeks to prove that the railroad breached its duty to maintain a reasonably safe workplace must show circumstances that " 'a reasonable person would foresee as creating a potential for harm.' " *Id.* at 1062 (quoting *McGinn*, 102 F.3d at 300). The court noted that most other circuits equate foreseeability with

---

[5]Seeberger did not rely heavily on this argument before the trial court. In fact, he even neglected to offer this argument in his memorandum in opposition to summary judgment. Presumably, he knew that it was not enough in itself to establish that the wrecking bar was unsafe, or that the injury was foreseeable.

notice, either actual or constructive. The *Williams* court found no evidence of either actual or constructive notice because the plaintiff offered no evidence that the door was defective, or that the railroad could have possibly discovered a defect on inspection. Similarly, Seeberger presented no evidence that the bar was unsafe or that BN had actual or constructive notice of the potential for injury.

In *Soto v. Southern Pacific Transportation Co.*, 514 F. Supp. 1 (W.D. Tex. 1979), *aff'd*, 644 F.2d 1147 (5th Cir. 1981), the Court of Appeals upheld a judgment n.o.v. for the defendant in a FELA action. While that case did not involve a motion for summary judgment, it does concern the sufficiency of evidence needed to put the issue of foreseeability to a jury in a FELA case. The plaintiff was injured while emptying a diesel pit using a wheelbarrow. *Id.* at 3. He alleged that the railroad should have allowed him to use an alternative method of cleaning the pit that was safer than the wheelbarrow method. *Id.* at 4. The court noted that the jury verdict would have established a rule that wheelbarrows are not reasonably safe. *Soto*, 644 F.2d at 1148. Although there were more advanced methods of performing the task, there was no evidence that the wheelbarrow method was unreasonably unsafe. *Id.* The plaintiff's evidence was therefore insufficient to place the issue of foreseeability before the jury.

In the absence of evidence showing the foreseeability of the harm, that question can be taken away from the jury and decided as a matter of law. In this case, Seeberger offered no evidence that the tool was unsafe, or that BN could have foreseen the harm. It is not enough to allege that the working conditions or tools were unsafe simply because the injury occurred. The plaintiff must offer some evidence that the tool is inherently unsafe in order to survive summary judgment. Given the absence of any such evidence, the trial court properly granted summary judgment.

BN did not argue, as the majority asserts, that because Seeberger had been using the tool this way for 20 years

without injury and did not consider it dangerous, the injury was not foreseeable. The grant of summary judgment did not turn on the fact that Seeberger did not foresee the injury, but on the total lack of evidence as to the dangerousness of the tool. BN was merely pointing out what Seeberger had failed to show. Seeberger's inexperience with the tool, previous injuries from its use, or even his own belief that the tool was unsafe might have been evidence of foreseeability. By noting the absence of such evidence, BN was not arguing for a "subjective" test of foreseeability as the majority suggests. It was simply pointing out what Seeberger had failed to show, which was its burden on summary judgment.

The majority rests its decision on the policy behind FELA that favors jury trials. Majority at 823-24. However, even the strongest policy considerations and humanitarian purposes behind FELA cannot compensate for a total lack of evidence. This is not a strict liability statute, but by sending the issue of foreseeability to the jury without any evidence, the majority allows the jury to treat it as such. The trial court's grant of summary judgment should be affirmed.

GUY, C.J., concurs with MADSEN, J.