IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| PHILLIP DURANCE,<br><br>               Appellant,<br><br>           v.<br><br>NATIONAL RAILROAD PASSENGER<br>CORPORATION, a/k/a AMTRAK, a<br>Washington, D.C. corporation,<br><br>               Respondent. | No. 83562-9-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

HAZELRIGG, J. — Phillip Durance appeals from an order granting summary judgment dismissal of his claim for negligence against National Railroad Passenger Corporation a/k/a Amtrak (Amtrak) under the Federal Employers' Liability Act (FELA).[1] Because Durance fails to raise a genuine issue of material fact as to the foreseeability of the harm suffered, summary judgment in favor of Amtrak was proper and, accordingly, we affirm.

---

[1] 45 U.S.C. § 51-60. Durance sued under 45 U.S.C. § 51 which provides for causes of action based on negligence liability.

Citations and pinpoint citations are based on the Westlaw online version of the cited material.

FACTS

On October 3, 2018, Phillip Durance was working for Amtrak as a baggage handler at the King Street Station in Seattle. During his shift, Durance entered the employee restroom which was only accessible via keycard. Just as Durance sat on the toilet seat, he heard an explosion and felt "the most pain [he'd] ever had in [his] life." Durance lifted the toilet seat and saw a red object, which appeared to him to be a firecracker, fall to the floor. Durance reported the incident to the King Street Station Agent, who told District Manager Gregory Bannish, who in turn notified Amtrak Police Detective Steven Travers. Travers interviewed Durance and took pictures of the stall, toilet, and firecracker, before driving Durance to Harborview Medical Center (Harborview) for examination and treatment.

At Harborview, Durance was given an ultrasound, a tetanus shot, and pain medication for his injury. The treating physician stated that Durance suffered a "superficial burn that should heal on its own." Once Durance was discharged from the hospital, Travers drove Durance to his car at a park and ride. During the drive, Durance and Travers spoke about the incident; according to Durance, Travers said that he intended to "solve this incident" and noted that "[w]e have several knuckleheads up here." Ultimately, neither Amtrak detectives nor officers from the Seattle Police Department ever discovered the identity of the perpetrator.

On July 9, 2020, Durance sued Amtrak in King County Superior Court under FELA, specifically 45 U.S.C. § 51, alleging that Amtrak negligently caused his injuries by failing to provide a safe work environment at King Street Station. Durance alleged that Amtrak was negligent under both the plain language of FELA

and the theory of res ipsa loquitur.[2]  Amtrak moved to exclude Durance's expert Dr. Stephen Morrissey and sought dismissal of Durance's suit on summary judgment.  After a hearing, and consideration of the expert declaration, the trial court granted Amtrak's motion for summary judgment and denied the motion to exclude Morrissey's declaration as moot.  On December 3, 2021, the trial court denied Durance's motion for reconsideration.  Durance timely appealed.

ANALYSIS

This court reviews summary judgment orders de novo.  Saralegui Blanco v. Gonzalez Sandoval, 197 Wn.2d 553, 557, 485 P.3d 326 (2021).[3]  On review, "[a]ll facts and reasonable inferences must be interpreted in the light most favorable to the nonmoving party."  Gibson v. Costco Wholesale, Inc., 17 Wn. App. 2d 543, 555-556, 488 P.3d 869, review denied, 198 Wn.2d 1021 (2021).  Summary judgment is only appropriate when there is "no genuine issue as to any material fact, so the moving party is entitled to judgment as a matter of law."  Saralegui Blanco, 197 Wn.2d at 557.

I.    Creation of a Federal Tort under FELA

In 1908, "[c]ognizant of the physical dangers of railroading that resulted in the death or maiming of thousands of workers every year, Congress crafted a

---

[2] Res ipsa loquitur (Latin for "the thing speaks for itself") is a doctrine meaning, relevant to FELA, "that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference; that they furnish circumstantial evidence of negligence where direct evidence of it may be lacking."  Jesionowski v. Bos. & Me. R.R., 329 U.S. 452, 457, 67 S. Ct. 401, 91 L. Ed. 416 (1947).

[3] Durance's first assignment of error on appeal asserts that the trial court failed to apply the proper evidentiary standard under FELA in its consideration of the summary judgment motion. Because we engage in de novo review, we need not analyze this challenge.

federal remedy that shifted part of the "'human overhead'" of doing business from employees to their employers." Consol. Rail Corp. v. Gottshall, 512 U.S. 532, 542, 114 S. Ct. 2396, 129 L. Ed. 2d 427 (1994) (quoting Tiller v. Atl. Coast Line R.R. Co., 318 U.S. 54, 59, 63 S. Ct. 444, 87 L. Ed. 610 (1943) (internal quotation marks omitted).  That federal remedy was a tort action under FELA, which provides:

> Every common carrier by railroad while engaging in commerce between any of the several States . . . shall be liable in damages to any person suffering injury while he is employed by such carrier . . . resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

45 U.S.C. § 51.

By enacting FELA, "'Congress took possession of the field of employers' liability to employees in interstate transportation by rail; and all state laws upon that subject were superseded.'"  Seeberger v. Burlington N. R.R. Co., 138 Wn.2d 815, 819, 982 P.2d 1149, 1151 (1999) (quoting Chi., Milwaukee & St. Paul Ry. Co. v. Coogan, 271 U.S. 472, 474, 46 S. Ct. 564, 70 L. Ed. 1041 (1926)).[4] Furthermore, questions regarding the "'kind or amount of evidence required to establish [liability] is not subject to the control of the several states.'"  Id. at 819 (quoting Coogan, 271 U.S. at 474).  Beyond the statute itself, the rights and duties of the parties are controlled by the "principles of common law as interpreted by the federal courts."  Coogan, 271 U.S. at 474.

---

[4] As FELA is a federal statute, Washington courts look to the decisions from the United States Supreme Court and federal courts when interpreting and applying the statute.  See Seeberger, 138 Wn.2d at 819-23.

- 4 -

In furtherance of "Congress' remedial goal[s]" and "FELA's humanitarian purposes," the statute is liberally construed by the courts. <u>Gottshall</u>, 512 U.S. at 542–43. Accordingly, the evidentiary burden for a FELA plaintiff is "'significantly lighter'" than it would be for an ordinary negligence action. <u>Seeberger</u>, 138 Wn.2d at 820 (quoting <u>Williams v. Nat'l R.R. Passenger Corp.</u>, 161 F.3d 1059, 1061 (7th Cir. 1998)). However, FELA is not a workers' compensation statute; liability is based on the employers' negligence, not the employees' injuries. <u>Ellis v. Union Pac. R.R. Co.</u>, 329 U.S. 649, 653, 67 S. Ct. 598, 91 L. Ed. 572 (1947). Therefore, "the FELA plaintiff must offer evidence proving the common law elements of negligence, including duty, breach, foreseeability, and causation." <u>Seeberger</u>, 138 Wn.2d at 820 (quoting <u>Williams</u>, 161 F.3d at 1062).[5]

When a FELA claim is based upon an intentional assault by one employee against another, the plaintiff may recover against the employer under one of two theories: respondeat superior[6] or direct negligence. <u>Taylor v. Burlington N. R.R. Co.</u>, 787 F.2d 1309, 1314 (9th Cir. 1986). Durance argues only that Amtrak is liable for its direct negligence. Under direct negligence, a railroad is liable if it "fails to prevent reasonably foreseeable danger to an employee from intentional or criminal misconduct." <u>Id.</u> at 1315.

II.     Foreseeability under FELA

_____

[5]In <u>CSX Transportation Inc. v. McBride</u>, the Supreme Court explained that FELA does not incorporate the common-law standards of proximate causation. 564 U.S. 685, 688, 131 S. Ct. 2630, 180 L. Ed. 2d 637 (2011). Rather, the causation element is satisfied so long as the employee shows that "the railroad's negligence played any part in bringing about the injury." <u>Id.</u>

[6]Respondeat superior (Law Latin "let the superior make answer") is the "doctrine holding an employer or principal liable for the employee's or agent's wrongful acts committed within the scope of the employment or agency." BLACK'S LAW DICTIONARY 1935 (11th ed. 2019).

As established by the Supreme Court, "the test of a jury case [under FELA] is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." Rogers v. Missouri Pac. R.R. Co., 352 U.S. 500, 506, 77 S. Ct. 443, 1 L. Ed. 2d 493 (1957).  Therefore, to determine whether a FELA claim will survive summary judgment we apply "a significantly reduced evidentiary standard," and only the "slightest evidence" of breach or causation is required to reach the jury. Seeberger, 138 Wn.2d at 822.  The issue of whether a duty exists, however, is a question of law for the court to determine.  Id.

While FELA imposes a duty on railroads to provide a safe workplace for their employees, the scope of this duty is limited by the reasonable foreseeability of the harm. Seeberger, 138 Wn.2d at 822-823.  The foreseeability of harm is an "essential ingredient" of negligence under FELA. Gallick v. Baltimore & O. R.R. Co., 372 U.S. 108, 117, 83 S. Ct. 659, 9 L. Ed. 2d 618 (1963).  For example, the jury in Gallick was provided instructions which explained the railroad's "'duties are measured by what is reasonably foreseeable under like circumstances'—by what 'in the light of the facts then known, should or could reasonably have been anticipated.'" Id. at 118.  Thus, the employer must have actual or constructive knowledge of the hazard, and the employee's harm must be "'within the ambit of the hazards covered by the duty imposed upon defendant.'" Seeberger, 138 Wn.2d at 823 (quoting Rikstad v. Holmberg, 76 Wn.2d 265, 269, 456 P.2d 355 (1969)).  If the harm suffered by Durance was foreseeable, Amtrak had a duty to exercise reasonable care to protect against it.

Durance argues that "Amtrak had at least constructive knowledge of the pervasive culture of pranking at King Street Station." Accordingly, he contends, Amtrak should have known that there was a potential hazard to its employees due to these "pranks." In his opposition to Amtrak's motion for summary judgment, Durance relied on testimony from multiple Amtrak employees in addition to his own. Bannish, Amtrak's district manager, stated in his deposition that new employees "go through a process that feel[s] uncomfortable because they're brand new, but that's just the nature of coming in and being a new employee and trying to get to know everybody." Bannish was unaware of any type of "hazing or harass[ment]" and had never experienced anything "that would be mean or cause injury."

Andrea Kletke Coms explained that her experience at King Street Station was an "old boys['] club kind of thing. If you're a woman, you don't fit in, and they make life hard for you. If you're a man, and you've been there with the company for a long time, you're good to go." In response to questioning during her deposition about her experience with "pranking or practical jokes," Kletke Coms eventually agreed that she experienced such conduct at work "every couple months" between 2015 and October 2018, including a banana peel in her money bag, staples removed from her staple gun, changing of her computer screen, and the lowering of her bar stool "all the way down really low."[7]

---

[7] At oral argument before this court, Durance characterized the bar stool incident as one where the stool was loosened to the point that it collapsed when sat upon, emphasizing the possibility of injury related to the fall. Wash. Court of Appeals oral argument, *Durance v. Nat'l R.R. Passenger Corp (Amtrak)*, No. 83181-0-I (Sept. 14, 2022), at 2 min., 30 sec., *video recording by* TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-2022091038/. However, Kletke Coms noted only that she had found her stool lowered, and no witnesses provided information about an incident like that described at argument.

An Amtrak ticket agent stated that he only knew of one other prank that happened at work, apart from the incident with Durance: pens being taken from Kletke Coms. Another Amtrak ticket agent purportedly told Travers that he "works with a bunch of children" and identified a particular coworker as one who "plays games" when he was interviewed by Amtrak detectives. A baggage claim worker, identified by his colleague as the employee who "plays games," explained that Amtrak employees, himself included, would engage in practical jokes such as unplugging keyboards, putting tape on money drawers, and partially tearing tickets. He further noted that on one occasion, employees bounced a racquetball behind a ticket counter until a supervisor told them to stop. Additionally, the other Amtrak detective working the case with Travers stated in his deposition that one of the Amtrak employees told him that some of their coworkers had "played football or something" in the back of King Street Station.

Still another Amtrak employee, Dustin Edwards, testified that on September 27, 2018, he heard a noise that "sounded like a loud firecracker going off" on the south side of King Street Station, followed by "some loud 'howling' from what sounded like kids." By the time Edwards got up to look out the break-room window, he could "only see the backs of hooded individuals running along the platform on track 4" and specifically noted that he had "no idea of age, sex or identity" of the people he observed through the window. The incident appeared to have occurred on the Sounder platform which is two tracks across from the Amtrak platform and is not Amtrak property. As Edwards did not report the incident, Amtrak did not

conduct an investigation.[8]  Based on the vague information later provided about this incident, even if Edwards had immediately reported it to Amtrak, it is unclear what he could have conveyed to put the railroad on notice of a risk of harm to their employees.

Viewing the evidence in the light most favorable to Durance, these depositions show that Amtrak likely had constructive knowledge that its employees engaged in unprofessional behavior while on the job.  However, contrary to the assertion of defense expert Morrissey, constructive knowledge of such conduct does not amount to constructive knowledge that there was potential danger to Amtrak employees from intentional or criminal misconduct.  In his opening brief, Durance cites to two FELA cases to support his argument that Amtrak had constructive knowledge of what Morrissey characterized as a "culture of pranking" at King Street Station, such that it would be liable for his injuries.  However, both cases are distinguishable.

In Lancaster v. Norfolk & Western Railway Co., the plaintiff was repeatedly assaulted and harassed by multiple supervisors, therefore, the court held that railroad management should have "gotten wind of it and done something to stop it."  773 F.2d 807, 820 (7th Cir. 1985).  Durance's declaration, however, does not

---

[8] During oral argument before this court, Durance averred that if Edwards heard the noise, others must have as well, such that Amtrak had constructive knowledge of risk of physical harm to its employees.  This requires far too much speculation to satisfy a summary judgment standard. "We consider all facts and reasonable inferences in the light most favorable to the nonmoving party, but the nonmoving party may not rely on speculation."  Specialty Asphalt & Constr., LLC v. Lincoln County, 191 Wn.2d 182, 191, 421 P.3d 925 (2018).

Durance carries the burden of proof to demonstrate a genuine issue of material fact, even if only by slight evidence.  However, he fails to provide any testimony that anyone other than Edwards actually noticed this incident, or how a noise originating from an adjacent property would have put Amtrak on notice of this broad category of risk.  Mere speculation does not create a genuine issue of material fact sufficient to survive summary judgment.

suggest that he was ever subject to harassment or assault on the job until this incident. In Bryant v. CSX Transportation Inc., the plaintiff was injured by a cherry bomb that was thrown in the railroad yard and employees testified that similar explosions of torpedoes and fireworks in the yard were "common." 577 So. 2d 613, 616 (Fla. Dist. Ct. App. 1991). There is no such evidence here.

Besides the isolated and unreported incident described by Edwards, which neither occurred on Amtrak property nor involved Amtrak employees (or at least there is no evidence in the record to suggest the participants worked for Amtrak), there was no evidence presented of any history of pranks that would have created a workplace hazard. Further, Edwards only noted that he heard something that "sounded like a loud firecracker." While Durance tries to wedge this fact into the Bryant framework, unlike that case, there is no evidence in the record that demonstrates that the noise Edwards heard was actually caused by an explosion of any kind. While Durance's expert presented opinions with regard to Amtrak's constructive knowledge, a side-by-side review of his report and the various Amtrak employee depositions on which he relied establishes that Morrissey's conclusions were based on mischaracterization of the evidence presented in those depositions. At summary judgment, the nonmoving party may not rely on mere conclusory statements unsupported by evidence. Seven Gables Corp. v. MGM/UA Ent. Co., 106 Wn.2d 1, 13, 721 P.2d 1 (1986).

Durance further attempts to broaden the test of foreseeability under FELA by relying on Mullahon v. Union Pacific Railroad to argue that his "'precise'" injury need not have been foreseeable so long as it "'might reasonably have [been]

foreseen that <u>an</u> injury might occur.'" 64 F.3d 1358, 1364 (9th Cir. 1995) (quoting <u>Green v. River Terminal Ry.</u>, 763 F.2d 805, 808 (6th Cir. 1985) (internal quotation marks omitted). Although this rule statement is accurate, it does not support a finding of foreseeability here. In <u>Mullahon</u>, the plaintiff successfully raised an issue of material fact regarding the railroad's direct negligence as a contributing cause in the death of an employee. <u>Id.</u> at 1362. In that case, a railroad employee was murdered on the job by a coworker, and the decedent's estate brought a claim against the railroad under FELA. <u>Id.</u> at 1360. To establish the reasonable foreseeability of harm, the plaintiff provided evidence that another employee knew several critical facts: 1) the shooter had brought an assault rifle to the work site, 2) the shooter had been acting strangely and fighting coworkers, 3) the shooter told him the day before that something bad was going to happen, and 4) the shooter made provisions for distributions of his assets and the care of his children. <u>Id.</u> at 1364. Therefore, the court explained that whether the "[r]ailroad employees suspected suicide or homicide is not controlling," it was "sufficient that a shooting with an assault rifle was foreseeable." <u>Id.</u> Unlike Mullahon's estate, which provided evidence showing the foreseeability of a specific employee engaging in a shooting on the job, Durance only offers evidence showing that unprofessional, and arguably immature, behavior by employees at King Street Station was reasonably foreseeable.

Durance also offers <u>Burns v. Penn Central Co.</u>, 519 F.2d 512, 513-14 (2nd Cir. 1975), and <u>Baltimore & Ohio Railroad Co. v. Taylor</u>, 589 N.E.2d 267, 270 (Ind. Ct. App. 1992), to support his argument that his precise injury need not be

foreseeable under FELA. Unlike Durance, however, the plaintiffs in both <u>Burns</u> and <u>Baltimore</u> presented evidence of actual dangerous conditions, known to the rail companies, which created a reasonable expectation of harm. For example, in <u>Burns</u>, there had been eight recent incidents where individuals had thrown stones at trains in a certain neighborhood, but the railroad failed to warn the employee before he was shot and killed while on board a train passing through that neighborhood. 519 F.2d at 513. Similarly, in <u>Baltimore</u>, railroad companies in the United States and Canada had recently reported 757 shooting incidents in one year, but the railroad failed to warn the employee before he was shot and killed while aboard the train. 589 N.E.2d at 267-74. In both cases, the railroad companies were aware of the risk of harm from projectiles on certain routes and failed to properly warn employees.

Although the standard under FELA is only slight evidence, the record here supports the trial court's conclusion that the harm suffered by Durance was not reasonably foreseeable. Acts such as unplugging keyboards, taping money jars, emptying staplers, changing computer screens, and altering office chairs do not create a reasonably foreseeable danger of the type of harm Durance suffered as the result of an explosive device. While Durance also provided testimony that employees had engaged in conduct perhaps inappropriate for a workplace, such as playing football and passing a racquetball, these are consensual activities which are distinct from carrying out pranks against unsuspecting coworkers. Although such behavior may be unsuitable for a place of business, there is no reasonable connection between these activities and the intentional assault that Durance

suffered in the bathroom stall.  Because the harm Durance suffered was beyond the scope of any duty held by Amtrak, and therefore not reasonably foreseeable, the court did not err by granting Amtrak's motion for summary judgment.

Affirmed.

WE CONCUR: