In the
United States Court of Appeals
For the Seventh Circuit

No. 99-2255

BRIAN A. KOSSMAN,

Plaintiff-Appellee,

v.

NORTHEAST ILLINOIS REGIONAL COMMUTER RAILROAD
CORPORATION, doing business as Metra/Metropolitan
Rail,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 96 C 8045--Arlander Keys, Magistrate Judge.

Argued January 12, 2000--Decided May 2, 2000

   Before POSNER, Chief Judge, COFFEY and RIPPLE,
Circuit Judges.

   COFFEY, Circuit Judge.   Brian Kossman brought
this action against his employer, Northeast
Illinois Regional Commuter Railroad d/b/a Metra
(Metra), pursuant to the Federal Employers'
Liability Act, 45  U.S.C. sec. 51 et seq. (FELA),
claiming that he suffered a shoulder injury in
the course of his employment while unloading
supplies from a delivery truck. After trial, the
jury returned a verdict for Kossman in the amount
of $304,000,/1 Metra moved for judgment as a
matter of law or, in the alternative, for a new
trial. The court/2 denied the motions and Metra
appeals. We affirm.

I.  BACKGROUND

   The facts of this case are quite simple.
Kossman, employed as an "extra clerk"/3 for
Metra, was directed, on September 9, 1994, to
assist in the unloading of a truck which had come
in with 55-gallon barrels of cleaning supplies on
pallets; a task he had done approximately fifty
times in the past. According to Kossman, this
load was unusual in that, instead of each pallet
containing a single 55-gallon barrel, some of the
pallets in this shipment contained as many as
three 55-gallon barrels.

    The employees were assisted in removing and transporting the pallets from the bed of the delivery truck to the warehouse by a pallet jack. A pallet jack is a four-wheeled, hydraulic lift device designed for lifting and moving heavy loads from one location to another. To move a pallet, the forks of the jack are placed under the top deck of the loaded pallet, and the hydraulic lift, when activated, raises the pallet off the floor. The jack (now with the loaded pallet) is then normally rolled off the bed of the truck and onto the loading dock.

    While Kossman was in the process of unloading the cleaning supplies, the forks of the jack became locked, in an unmovable position, under a pallet loaded with three 55-gallon barrels. As Kossman attempted to free the jack, he "kind of heard a little pop or crack [in his shoulder], but [he] didn't really think anything of it at the time because it [sic] wasn't immediate pain." After he unsuccessfully attempted to free the jack, Kossman asked one of his co-workers for assistance, and the two men eventually freed the jack, but Kossman still faced other obstacles; a 3-6 inch vertical space existed between the truck's unloading gate and the dock./4

    In order to unload the pallets, as Kossman was required to do that day, employees are forced to make a running jump with the loaded pallet jack, leaping from the truck bed to the dock below. Because of the configuration of the dock, the employees are then forced to make an immediate and sharp turn to avoid crashing into, or flying over, a railing on the other side of the loading dock. As Kossman attempted to perform this maneuver with the jack holding the three 55-gallon barrels, he "just felt a strain, like I had pulled a muscle or something."

    Immediately after the incident Kossman only felt like he had a muscle strain, but the next day his arm "was totally immobilized" and he "couldn't move it at all" because of the pain and discomfort. Kossman visited the company doctor and was immediately "taken out of service." Because Kossman's pain continued, he went to an orthopedic surgeon and was directed to undergo arthroscopic surgery on his shoulder; a procedure he had twice, once in 1995 and again in 1998. Despite these surgeries and physical therapy, and although he has now regained some of the lost range of motion in his shoulder, Kossman "is never comfortable" and is still unable to return to work and perform his usual duties, and has yet to return to any form of employment./5

    Based on the injury suffered while unloading

the barrels of cleaning supplies, Kossman filed this action against Metra alleging that Metra failed to provide him with a safe place to work by: 1) failing to adopt and implement a safe method and procedure for unloading supplies; 2) failing to provide adequate equipment; 3) assigning him work that was beyond his known physical ability; 4) failing to provide sufficient personnel to unload the supplies; 5) improperly training him to use unsafe methods; 6) improperly supervising him; 7) failing to properly secure the loading pallet; and 8) failing to exercise ordinary care to provide him with a safe place to work. The complaint alleged that one or more of the foregoing negligent acts or omissions caused, in whole or in part, Kossman's shoulder injury.

Because neither party requested a special verdict, the trial judge allowed the jury to return a general verdict for Kossman (without answering any interrogatories). After the jury awarded Kossman $304,000, Metra moved for judgment as a matter of law or, in the alternative, for a new trial.

With respect to Kossman's claim that Metra failed to adopt and implement a safe method and procedure for unloading the pallets from the truck, the trial judge concluded that Kossman did provide sufficient evidence to support the jury's verdict. The court reasoned that

the jury, viewing Plaintiff's [evidence] and using its own common sense, could have concluded that pushing and pulling a five-foot-long pallet jack loaded with from 1200 to 1500 pounds of cargo at a speed that would allow the jack to jump a three- to six-inch gap and require the jack operator to quickly turn the handle, upon landing, to avoid being thrown into or over the railing, which was located about five feet from where the pallet landed, was unreasonably unsafe. Based on the evidence presented in the case, this is the only theory on which the jury could have supported its decision, and it is not an unreasonable one.

The magistrate judge then denied Metra's motions for judgment as a matter of law and for a new trial. Metra appeals.

II.  ISSUES

On appeal Metra argues that the district court erred in: 1) denying its motions for judgment as a matter of law and for a new trial; and 2) informing the jury that Kossman was ineligible for worker's compensation benefits.

III. ANALYSIS

A. The FELA

FELA, enacted in 1908, provides a federal tort remedy for railroad employees, such as Kossman, injured on the job. See Williams v. National Railroad Passenger Corp., 161 F.3d 1059, 1061 (7th Cir. 1998). Unlike worker's compensation statutes, FELA requires Kossman to prove negligence on the part of Metra. See id. However, the Supreme Court has held that the negligence standard is relaxed in FELA cases and a plaintiff, in order to get his case to the jury, need only produce evidence which demonstrates that the "'employer['s] negligence played any part, even the slightest, in producing the injury.'" Consolidated Rail Corp. v. Gottshall, 512 U.S. 532, 543 (1994) (quoting Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 506 (1957)). A plaintiff, therefore, carries a lighter burden in a FELA action than in an ordinary negligence case. See Harbin v. Burlington Northern Ry. Co., 921 F.2d 129, 132 (7th Cir. 1990) (noting examples of FELA actions submitted to jury based only upon "evidence scarcely more substantial than pigeon bone broth"). Furthermore, courts "have interpreted [FELA] liberally in light of its humanitarian purposes." Williams, 161 F.3d at 1061 (citing Metro-North Commuter R. Co. v. Buckley, 521 U.S. 424, 429 (1997)).

All this being true, FELA "is not an insurance statute." Gottshall, 512 U.S. at 554. A plaintiff bringing an action under FELA "who fails to produce even the slightest evidence of negligence" should not be permitted to go to trial. Williams, 161 F.3d 1061-62. In other words, a plaintiff who brings a successful claim under FELA must establish that the defendant breached its duty by demonstrating that "a reasonable person would foresee [the alleged circumstances] as creating a potential for harm." McGinn v. Burlington Northern R.R. Co., 102 F.3d 295, 300 (7th Cir. 1996). Given the plaintiff friendly nature of FELA, it is easy to understand why the trial judge did not commit error when denying Metra's motions for judgment as a matter of law and for a new trial.

B. Motions for Judgment as a Matter of Law and for a New Trial

As stated previously, Metra challenges the district court's denial of its post-trial motions for judgment as a matter of law or, alternatively, for a new trial. We review the denial of a motion for judgment as a matter of law de novo. See Tincher v. Wal-Mart Stores, Inc., 118 F.3d 1125, 1129 (7th Cir. 1997).

Judgment as a matter of law may be entered where "there is no legally sufficient evidentiary basis for a reasonable jury to find for [a] party on [an] issue." Fed. R. Civ. P. 50. Furthermore, this Court must, after reviewing the record and drawing all reasonable inferences in the light most favorable to Kossman, determine whether the verdict is supported by sufficient evidence. See Tincher, 118 F.3d at 1129. Although we review the denial of a motion for judgment as a matter of law de novo, our review of the denial of Metra's motion for a new trial is under the abuse of discretion standard. See Robinson v. Burlington Northern R.R., 131 F.3d 648, 656 (7th Cir. 1997). Additionally, we will not overturn a jury's verdict "[a]s long as there is a reasonable basis in the record to support it." Id.

In the present case, Kossman was directed to unload cleaning supplies from a truck parked at the loading dock, and consistent with Metra's policy, Kossman was required to push and pull a five-foot-long pallet jack loaded with three 55-gallon drums that weighed approximately 1200 to 1500 pounds. In order to accomplish the unloading of these pallets, Kossman was forced to pull the load with enough speed so as to allow the hydraulic jack, holding the loaded pallet, to jump a three- to six-inch space./6 Kossman, after generating the necessary speed to jump the gap and land on the loading dock, was also required to make an immediate and sharp turn in order to avoid being catapulted into, or going over, the railing which was located a mere five feet from the point where the loaded jack left the truck. The jury was well within its discretion to conclude that this was a most unsafe practice and that Metra should have foreseen that such an unloading practice could result in an injury. We are also of the opinion that with the information cited above in the record there is more than a reasonable basis in the record to support the jury's conclusion that Kossman was injured when he was unloading the loaded pallets from the truck in the manner described above because of Metra's failure to adopt and implement a safe method and procedure for unloading the pallets from the truck. Accordingly, we agree with the trial judge that Metra was not entitled to judgment as a matter of law.

Metra also attacks the jury verdict, claiming that it should have been given a new trial because the evidence was insufficient to support the jury's verdict and the damages awarded to Kossman were excessive.

With respect to the claim that there was insufficient evidence presented to the jury to

support its verdict, we are of the opinion that the evidence before the jury, described above, did, in fact, provide more than a sufficient basis for a reasonable jury to return a verdict for Kossman. This is especially true because even though some of the issues presented to the jury were later ruled to be legally insufficient, Metra, for reasons unexplained, failed to request a special verdict or a general verdict with answers to written interrogatories. Because the defendant never requested any special form of verdict, the jury only returned a general verdict for Kossman. And when a jury only returns a general verdict, we need only find support in the record for one of the theories presented to the jury in order to affirm the jury award. See, e.g., Wassel v. Adams, 865 F.2d 849, 855 (7th Cir. 1989); Culli v. Marathon Petroleum Co., 862 F.2d 119, 123 (7th Cir. 1988).

As detailed above, the jury was provided with sufficient evidence to reasonably conclude that the procedure Kossman was required to employ in order to remove pallets loaded with three 55-gallon barrels was unreasonably dangerous and that an injury, such as the one suffered by Kossman, was or should have been foreseeable to Metra. We thus refuse to hold that the district court abused its discretion in refusing to grant Metra a new trial based on the sufficiency of the evidence.

As noted above, the jury awarded Kossman $100,000 for loss of future income. Metra claims that because this award was against the manifest weight of the evidence, the judge abused his discretion in denying its motion for a new trial. However, we will not reverse an award of damages for lost wages because of questionable assumptions unless it yields an unreasonable result. See O'Shea v. Riverway Towing Co., 677 F.2d 1194, 1201 (7th Cir. 1982). Indeed, "[a] trial judge may vacate a jury's verdict for excessiveness only when the award was monstrously excessive or the award had no rational connection to the evidence." Debiasio v. Illinois Central R.R., 52 F.3d 678, 686 (7th Cir. 1995) (citations and internal quotations omitted).

On appeal, Metra claims that the award of $100,000 for loss of future earnings was excessive and against the manifest weight of the evidence because: 1) the injury was not as severe as Kossman claimed; and 2) Kossman's "vocational economist" should not have been allowed to testify.

In order to support its claim that Kossman exaggerated the severity of his injury, Metra argues that there was a general "lack of

truthfulness throughout this case" by Kossman as evidenced by the fact that Kossman had lied on his employment application and at a deposition when asked about previous felony convictions. Metra also points to the surveillance videos taken of Kossman while he was at the beach which demonstrate, according to Metra, that Kossman did not suffer any severe injuries.

The problem with Metra's arguments is that the jury had all this information before it and chose to credit the testimony of Kossman and the fact that he had already undergone two arthroscopic surgeries on his shoulder as a result of the injury he suffered during the course of his employment with Metra and was preparing to have a third. And as we have long held,

[w]e will not second-guess a jury on credibility issues. While this court's review is confined to the "cold pages" of an appellate transcript, the jury had an opportunity to observe the verbal and non-verbal behavior of the witnesses, including the subject's reactions and responses to the interrogatories, their facial expressions, attitudes, tone of voice, eye contact, posture and body movements . . . . [I]t is not the task of this appellate court to reconsider the evidence or assess the credibility of the witnesses.

Hasham v. California State Bd. of Equalization, 200 F.3d 1035, 1047 (7th Cir. 2000) (citing United States v. Hickok, 77 F.3d 992, 1006 (7th Cir. 1996)).

The simple fact is that the jury had every opportunity to review, observe, and digest the video that Metra offered into evidence showing Kossman engaging in activity which allegedly was inconsistent with his claimed injury. Metra also introduced into evidence the fact that Kossman had lied on his employment application and at a deposition when asked about previous felony convictions. Despite all this, the jury still chose to credit Kossman's testimony, and we are of the opinion that Kossman's testimony and evidence was not so lacking as to prohibit the jury from relying on his testimony, and we therefore decline Metra's invitation to revisit credibility determinations made by the jury. Nor is the award of $100,000 for loss of future income so outrageous as to be excessive. We are convinced that Metra is not entitled to a new trial based on Kossman's testimony being insufficient to support the jury's award of damages.

Metra also claims that the judge erred in admitting the testimony of Kossman's "vocational

economist," Stanley Hunton, because he was without the necessary "education, training, or experience which would allow him to testify as to the plaintiff's economic loss or the present value required to replicate the plaintiff's claimed economic loss." However, Metra's argument addressing this issue is inadequate to preserve the issue for review because, in an argument that spans less than one page in length and contains only one case citation, Metra merely makes a general statement that Hunton was unqualified to testify, but does not articulate what standard the trial judge should have used or what contrary evidence it put forth as to the plaintiff's loss of future earnings. See Tyler v. Runyon, 70 F.3d 458, 466 (7th Cir. 1995) ("This court has no duty to research and construct legal arguments available to a party."); Ehrhart v. Secretary of Health and Human Serv., 969 F.2d 534, 537 n. 5 (7th Cir. 1992) ("[C]ompelling the court to take up a burdensome and fruitless scavenger hunt for arguments is a drain on its time and resources."). Metra's bare accusation that the award was too high is not enough to call into question the judge's decision to allow Hunton to testify. Furthermore, Metra merely makes reference to arguments made in its motion in limine to the district court, a practice that is disfavored. See generally Fed. R. App. P. 28(a)(6). Because Metra failed to adequately address the issue of Hunton's ability to testify at trial in its brief, we hold that Metra has waived this issue. Consequently, we do not consider this issue any further.

C.  Worker's Compensation

  Metra's final argument on appeal is that the district court erred in informing the jury that Kossman was ineligible for worker's compensation. When the subject of Kossman's ineligibility came up before trial, the court informed the parties that it planned on telling the jury that "you may wonder why Kossman is suing Metra for an injury that is normally covered by workmen's compensation. Well, in most cases railroad employees are not covered by workmen's compensation and must file a suit under [FELA] in order to be compensated." It is important to point out that before the magistrate judge informed the jury of the unavailability of worker's compensation, he specifically asked the respective counsel for Metra and for Kossman if such language was acceptable, and both responded, "[t]hat's fine."

  Given that counsel for Metra not only failed to object to this approach by the district court, but affirmatively supported the judge informing the jury that Kossman was ineligible for worker's

compensation benefits, we are of the opinion that Metra has waived this issue on appeal. See, e.g., United States v. Durman, 30 F.3d 803, 810 (7th Cir. 1994).

Consequently, the decision of the district court is

AFFIRMED.

/1 The jury's general verdict stated that Metra should pay $50,000 for disability, $0 for disfigurement, $50,000 for pain and suffering, $104,000 for loss of past earnings, and $100,000 for present value of future lost earnings.

/2 By agreement of the parties, the case was assigned to Magistrate Judge Arlander Keys.

/3 As an "extra clerk," Kossman performed a variety of jobs, including assisting passengers through the gates and with train information, ticket collection, maintenance, snow clearing, spreading salt, delivering packages, janitorial services, and occasionally unloading trucks.

/4 The hydraulic gate at the back of the truck was lowered toward the loading dock but the hydraulic gate did not fit flush with the floor of the loading dock. As Kossman's supervisor, James Simpson, testified, the gap was "a couple of inches at least."

/5 We note that Metra introduced a series of surveillance videos of Kossman taken on the beach in 1996 after he was supposedly completely disabled from work and suffering some disfigurement in his shoulder. The videos, according to Metra, portray the plaintiff walking on the beach without a shirt and Kossman seems to be engaging in "normal recreational activities," unrestricted use of his left shoulder, and no evidence of Kossman's alleged disfigurement of the shoulder (one side being lower than the other) is displayed.

/6 Simpson admitted that, "I know they had to pull it pretty fast. . . . Two men had to push, and the other had to pull. It had to be a coordinated effort."