**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 16, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

BARRY CHAFFIN,

Plaintiff-Appellee,

v.

UNION PACIFIC RAILROAD
COMPANY,

Defendant-Appellant.

No. 04-3313

(D. Kansas)

(02-CV-1188-JTM)

**ORDER AND JUDGMENT**[*]

Before **HENRY**, **ANDERSON**, and **O'BRIEN**, Circuit Judges.

Union Pacific Railroad Company ("Union Pacific"), the former employer of

Barry Chaffin, appeals a jury verdict in favor of Mr. Chaffin compensating him

for various damages resulting from a foot injury he sustained while working as a

conductor. Specifically, Union Pacific contends that the district court erred by

admitting certain testimony about Mr. Chaffin's lost future wages claim, by

denying Union Pacific's Motion for a New Trial and Judgment as a Matter of

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
may be cited under the terms and conditions of 10th Cir. R. 36.3.

Law, and by permitting the jury to consider Mr. Chaffin's lost future wages claim. Because we hold (1) that the district court did not abuse its discretion by admitting the testimony; (2) that Mr. Chaffin presented sufficient evidence for the jury to find Union Pacific's negligence caused his injury and to support his lost future wages claim; and (3) that the jury properly considered Mr. Chaffin's lost future wages claim, we affirm the district court.

## I. BACKGROUND

This appeal concerns a lawsuit that Mr. Chaffin filed under the Federal Employers Liability Act ("FELA") seeking damages for the injuries he sustained during one of his shifts as a conductor for Union Pacific. In this suit, he alleged that, as a result of Union Pacific's negligence, he suffered frostbite, causing him to stumble and injure his foot. The facts, viewed in the light most favorable to Mr. Chaffin, *see Snyder v. City of Moab*, 354 F.3d 1179, 1187 (10th Cir. 2003), are as follows.

On January 30, 1999, Mr. Chaffin reported to work in Dalhart, Texas and received his assignment to take a train staffed by himself and an engineer, Mr. John Hall, to Amarillo, Texas and drop off 87 freight cars. Another railroad company, the Burlington Northern and Santa Fe Railroad ("BNSF") owned and operated the train yard in Amarillo where Mr. Chaffin had been directed to drop off the 87 freight cars belonging to Union Pacific. A trackage rights agreement

2

permitted Union Pacific to use some of the tracks in the BNSF yard. The agreement also provided that BNSF would be responsible for maintaining the train-yard tracks, and also for cleaning and maintaining the switches. Further, the agreement required that Union Pacific and BNSF "shall bear all costs of loss and/or damage to its sole employees . . . without regard to which party was at fault." App. vol. IV, at 508.

One of the conductor's duties is to clean the railroad switches in bad weather while en route. Because of the blizzard conditions in that region of Texas, Mr. Chaffin wore weather-appropriate gear, including company-approved work boots, a ski mask, thermal underwear, ski pants, and multiple layers. Union Pacific provided Mr. Chaffin with a switch broom so he could perform this duty – a broom with a chisel on the handle used to break up and dislodge ice and snow. Mr. Chaffin needed to stop the train to clean the switches at several locations on the way from Dalhart to Amarillo. While working on clearing ice and snow from the switches, he alternated spending fifteen minutes outside and fifteen minutes inside to stay warm. While cleaning one of these switches, Mr. Chaffin may have punctured one of his boots with the switch broom.

Once the train arrived in Amarillo, William Forsythe, the manager of the train yard and an employee of Union Pacific, was to notify BNSF that the train with the freight cars had arrived so that BNSF cleaning crews could begin to

3

clean the switches, enabling the train to move into the yard. He also was responsible for ensuring that BNSF had cleaned and cleared all switches. Because Mr. Forsythe had been on a conference call, he failed to notify BNSF that Mr. Chaffin's train had arrived. He had seen BNSF crews earlier in the day, but he did not know whether these crews had cleaned the switches that Mr. Chaffin needed to use to deliver the deliver the freight cars.

Upon arrival in Amarillo, Mr. Forsythe instructed Mr. Chaffin to break apart the freight cars forming the train in a manner that was contrary to the work order Mr. Chaffin had received before leaving Dalhart. Mr. Chaffin asked to break up the train differently, since the trip to Amarillo had taken nearly twice as long as usual due to the weather, but Mr. Forsythe denied this request. To carry out Mr. Forsythe's instructions to break up the train, Mr. Chaffin needed to move the train along four different tracks and employ a number of switches to move between the tracks in the train yard. Mr. Chaffin testified that Mr. Forsythe ordered him to clean the switches, and that he believed he would be disciplined or terminated if he did not obey Mr. Forsythe's instructions.

While Mr. Chaffin was cleaning the first switch, Mr. Forsythe drove out to the tracks and saw him clearing ice and snow off the switch. After this encounter, Mr. Forsythe called for BNSF crews to clean out the switches that Mr. Chaffin would need to use in order to comply with Mr. Forsythe's instructions. Mr.

4

Forsythe did not tell Mr. Chaffin that BNSF crews were on their way. After cleaning this first switch, the train was able to move forward, but Mr. Chaffin soon encountered a derail device that had to be cleaned. Mr. Chaffin decided to notify the BNSF maintenance crews himself regarding the condition of the derail device. He also called Mr. Forsythe to explain that the condition of the derail device made it unsafe for the train to proceed into the yards. Mr. Forsythe instructed Mr. Chaffin to leave the train and proceed into the yard to begin cleaning the switches. The train could not follow Mr. Chaffin into the yard until the derail device was cleaned.

Mr. Chaffin continued to work on cleaning the next switch he encountered. Mr. Forsythe had told Mr. Chaffin that he would send a van to transport Mr. Chaffin around the train yard, but it did not arrive. Mr. Chaffin called Mr. Forsythe to tell him he was cold and to ask about the van's status. Mr. Forsythe told Mr. Chaffin the van would arrive soon, so Mr. Chaffin continued down the tracks to the next switch. Mr. Chaffin testified that he could have returned to the depot to warm up, but decided to continue in light of his understanding that the van would soon arrive.

The van did not arrive, and Mr. Chaffin's foot had become numb and was hurting. He decided to walk to the train depot, which was around 2,500 feet away, to warm up, but he slipped on the way. After slipping, Mr. Chaffin decided

5

it would be more prudent to seek shelter in a train engine that was much closer. His foot was swollen by this time. Mr. Chaffin had continued calling Mr. Forsythe for assistance, who later arrived at the engine where Mr. Chaffin was taking shelter. Mr. Chaffin asked for a ride back to the train, but Mr. Forsythe did not give him one. Later, the van arrived, and Mr. Chaffin was able to return to his train, boarding it with assistance from Mr. Hall. Mr. Chaffin's pants, socks and boots were wet, and when he attempted to remove his frozen sock, part of his foot peeled off. Mr. Chaffin had been outside in the Amarillo train yard for nearly four hours. Mr. Chaffin continued to try to work for Union Pacific, despite his injury, for almost four more years. In 2003, he filed the suit that is the subject of this appeal.

At the 2004 trial, Mr. Chaffin presented evidence from his doctor, Greg Horton, about the injuries that he suffered due to the fall in the Amarillo train yard. Dr. Horton explained that it is common for a person to slip and sustain injuries when his foot is numb, and that in his medical opinion, the debilitating foot injury Mr. Chaffin had suffered had been caused by his accident in the train yard. Additionally, Dr. Horton stated that Mr. Chaffin's injury, consisting of tears to the ligaments, permanently prevented Mr. Chaffin from performing the duties associated with being a railroad conductor.

Mr. Chaffin claimed that his injury prevented him from "maximiz[ing] his

6

earning capacity." *Id.* at 502. Mr. Chaffin presented evidence regarding the economic damages he sustained as a result of the injury to his foot. He was 47 at the time of the trial, and at the time of the injury five years earlier, he had worked for over 20 years at Union Pacific. Mr. Chaffin did not testify or offer any documentary evidence as to what his yearly earnings were from 1979 to 1999, but he testified that conductors with his level of seniority who work extra shifts (also referred to as "extra boards" in the railroad industry) earned around $85,000 annually. A Union Pacific representative testified that a conductor like Mr. Chaffin could earn approximately $75,000-$80,000.

Mr. Chaffin also called Mr. J.R. Stang, a Union Pacific conductor who worked in the same region as Mr. Chaffin and who had achieved a similar level of seniority. Union Pacific had objected to Mr. Stang's testimony as irrelevant, but the district court overruled this objection. Mr. Stang testified as to his annual earnings from 2000 to 2003, which ranged between approximately $86,000 and $100,0000. Mr. Stang admitted that he took many extra boards to earn this much, and that extra boards had been readily available over the past few years. He testified that he could not remember when he took an uncompensated day off, and agreed that he earned that amount of money through a "superhuman effort." *Id.* vol. III, at 486. He also told the jury that Mr. Chaffin could earn the same amount if he took the extra board work.

With regards to his lost future earnings claim, Mr. Chaffin additionally told the jury that, once his children were raised, he had planned to take as much work as Mr. Stang. Additionally, the jury also knew that Mr. Chaffin had taken 51 days of uncompensated leave during 1998. Mr. Chaffin testified that he had planned to work until he was 65 or 70.

Before the jury began deliberations, Union Pacific objected to Instruction 23, which permitted the jury to consider Mr. Chaffin's lost future wages claim. Union Pacific had also made an oral motion for judgment as a matter of law at the close of Mr. Chaffin's evidence. The court overruled these objections, and submitted the case to the jury. The jury found that Union Pacific's negligence caused Mr. Chaffin's injury, but decided that Mr. Chaffin also was negligent. It apportioned the blame 63% to Union Pacific and 37% to Mr. Chaffin, and awarded him $819,000 to compensate him for past and future lost wages, past and future medical expenses, and past and future non-economic losses.

After the verdict, Union Pacific filed a Motion for New Trial and for Judgement as a Matter of Law, which the district court denied. It timely filed this appeal. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## II. DISCUSSION

On appeal, Union Pacific raises three points of error: first, that the district court abused its discretion by allowing Mr. Stang to testify; second, that the

8

district court erred by failing to grant its Motion for New Trial and Judgment as a Matter of Law; and third, that the district court erred by allowing the jury to consider Mr. Chaffin's lost future wages claim. We address each argument in turn below.

## A.  Admission of Mr. Stang's Testimony

We review evidentiary rulings for abuse of discretion. We "will not disturb a trial court's decision unless we 'have a definite and firm conviction that the [trial] court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.'" *United States v. Talamante*, 981 F.2d 1153, 1155 (10th Cir. 1992) (quoting *United States v. Ortiz*, 804 F.2d 1161, 1164 n.2 (10th Cir. 1986)).

Union Pacific argued, pursuant to Federal Rules of Evidence 401, 402, and 403, that the district court should not admit Mr. Stang's testimony because it was irrelevant and likely to mislead the jury. The district court denied this motion, and Mr. Stang testified, as recounted above. On appeal, Union Pacific renews its relevancy arguments under Rules 401 and 403, primarily contending that Mr. Stang's earning history did not tend to prove what Mr. Chaffin could have earned in the future because the two conductors were not similarly situated, citing *Plourd v. Southern Pacific Transportation Co.*, 513 P.2d 1140 (Or. 1973) (*Plourd I*), for support. Mr. Chaffin argues that he and Mr. Stang were similarly situated, that

9

the jury knew of all relevant differences between the two, and that the Oregon Supreme Court's rehearing of *Plourd I* supports the district court's decision to admit Mr. Stang's testimony. *See Plourd v. S. Pac. Transp. Co.*, 534 P.2d 965 (Or. 1975) (*Plourd II*) (concluding that the plaintiff laid a proper foundation for a co-worker's testimony because the plaintiff offered additional evidence to explain discrepancies between their earnings histories).

Federal Rule of Evidence 401 provides, in relevant part, that "'[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. "Evidence that is not relevant is not admissible." *Id.* 402.

Although neither *Plourd I* or *Plourd II* is a case from this circuit interpreting the Federal Rules of Evidence, we nonetheless find that these cases provide a helpful framework to determine whether Mr. Stang's testimony "has sufficient probative value so as to be properly admissible." *Plourd I*, 513 P.2d at 1148. The *Plourd* cases concerned an injured railroad employee's attempt to prove his future earnings capacity by using the testimony of another railroad employee. *Plourd I* initially held that a trial judge erred by admitting the testimony of the other employee because the plaintiff demonstrated earning capacity was less than the other employee, but he provided no explanation for the

10

discrepancies between the other employee's earnings and his own. This allowed

the jury "to assume that in the future plaintiff will earn as much as the other

workman. This is not a valid assumption in the face of proof of what they

actually earned and in the absence of proof why plaintiff in the past had been

earning less." *Id.* at 1150-1151 (Holman, J., concurring in the result). The

Oregon Supreme Court remanded the case to the trial court for a new trial.

On remand, the plaintiff again submitted evidence of other employees'

earnings to support his claim of lost future earning capacity. The other employees

were all employed by the same division of the railroad company and of similar

seniority. The plaintiff explained that the other employees earned more than he

because he was responsible for raising his children after a divorce, but that after

his children were raised, he intended to seek promotions and extra shifts. *Plourd*

*II*, 534 P.2d at 968. Thus, the court found that the additional information caused

the testimony to meet the standard for admissibility: "evidence of earnings of

other employees is admissible upon the issue of impairment of future earning

capacity if there is a substantial similarity in the circumstances." *Id.* "[I]n this

case, the differences in the circumstances of the plaintiff and of other such

employees are matters which go to the weight to be given to such evidence by the

jury, rather than to bar the admissibility of such evidence." *Id.* at 969.

The district court relied on the *Plourd* cases and decided that "some

11

differences did exist between Stang's circumstances and those of the plaintiff. However, these differences clearly fell within matters which affect the weight they are to be given by the jury; they did not require Stang's testimony to be excluded." App. vol. II, at 254 (Dist. Ct. Order, dated July 22, 2004).

We hold that the district court was within its discretion to admit Mr. Stang's testimony. Mr. Chaffin submitted testimony that both he and Mr. Stang had begun working for Union Pacific in 1979; were comparable in seniority; and had sufficient seniority to take the highest paying extra boards. Mr. Chaffin also offered evidence regarding the differences between himself and Mr. Stang – Mr. Chaffin took days off in order to help raise his children, whereas Mr. Stang worked every available day he could. Mr. Chaffin told the jury that he had planned to work more once his children were raised. These similarities are sufficient to make testimony regarding Mr. Stang's earnings probative of what Mr. Chaffin would have earned had he continued to work.

Union Pacific also argues on appeal that even if the testimony was relevant, it should nonetheless have been excluded because its probative value was outweighed by the "danger of unfair prejudice, confusion of the issues, or misleading the jury." FED. R. EVID. 403. We disagree. Although we accept that there is some danger of confusion to the jury when another person's wages and experience are used to show what the plaintiff could have earned, the danger is

minimal when the jury hears evidence regarding not only the similarities between the witness and the plaintiff, but also their differences. Counsel for both parties clearly highlighted the differences between Mr. Stang and Mr. Chaffin, and the jury had the opportunity to evaluate those differences in calculating its award of damages, and therefore, the danger of prejudice and confusion was minimal. We therefore hold that the district court properly admitted Mr. Stang's testimony over Union Pacific's objections.

**B.      Motion for a New Trial and Judgment as a Matter of Law**

We next consider Union Pacific's Motion for a New Trial and Judgment as a Matter of Law, which presented two arguments before the district court: first, that Mr. Chaffin had failed to present sufficient evidence to prove Union Pacific's negligence caused his injuries; and second, that Mr. Chaffin failed to present sufficient evidence to support his claim for future lost wages. Union Pacific renews both these arguments on appeal.[1]

---

[1] Mr. Chaffin argued in his response brief in this appeal that Union Pacific failed to preserve these issues because its brief before the district court only challenged whether Mr. Chaffin proved his injuries were foreseeable (not whether Mr. Chaffin proved negligence, causation, and lost future wages). Mr. Chaffin's position overlooks the oral motion for judgment as a matter of law that Union Pacific made at the close of Mr. Chaffin's evidence. *See* Rec. vol. IV, at 663-668. The oral motion, in combination with the written brief, are sufficient to preserve Union Pacific's arguments. *See Aguinaga v. United Food & Commercial Workers Int'l Union*, 993 F.2d 1463, 1470 (10th Cir. 1993). Mr. Chaffin also contends that Union Pacific waived any appellate argument regarding

(continued...)

We review the district court's denial of Union Pacific's motion for judgment as a matter of law under Rule 50 of the Federal Rules of Civil Procedure de novo, applying the same standard as the district court. *Escue v. N. Okla. College*, 450 F.3d 1146, 1156 (10th Cir. 2006). "Judgment as a matter of law is appropriate only if the evidence points but one way and is susceptible to no reasonable inferences which may support the nonmoving party." *Id.* We review the district court's denial of Union Pacific's motion for a new trial for abuse of discretion. *Snyder*, 354 F.3d at 1187-88. The jury verdict must be upheld unless it is "clearly, decidedly, or overwhelmingly" against the weight of the evidence. *Weese v. Shuckman*, 98 F.3d 542, 550 (10th Cir. 1996). We "consider[] the evidence in the light most favorable to the prevailing party." *Snyder*, 354 F.3d at 1187.

 1.    Negligence Claim

Mr. Chaffin brought suit under FELA, which imposes liability on a railroad company when its negligence, or that of its employees or agents, results in injury to an employee. 45 U.S.C. § 51. "[T]he existence of negligence under FELA is a federal question which generally turns on principles of common law." *Smith v. Union Pac. R.R. Co.*, 236 F.3d 1168, 1172 (10th Cir. 2000). Those common law

---

[1](...continued)
foreseeability because it did not discuss the issue in its opening brief on appeal. Mr. Chaffin is simply incorrect on this point. *See* Aplt's Br. at 29-31.

elements "includ[e] duty, breach, foreseeability, and causation." *Williams v. Nat'l R.R. Passenger Corp.*, 161 F.3d 1059, 1062 (7th Cir. 1998). Union Pacific's brief on appeal challenges each of these elements. We conclude that Mr. Chaffin presented sufficient evidence under each element.

### a. Duty and Breach of Duty

The district court instructed the jury that it had to find that Union Pacific breached at least one of the following duties: the provision of (1) reasonably safe conditions to work; (2) adequate assistance while working; (3) adequate tools and equipment; and (4) reasonably safe methods for working. App. vol. II, at 215 (Jury Instruction no. 13). Keeping in mind that because of FELA's comparative negligence provision, *see Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 542-43 (1994), an employer's negligence need not have been the sole cause of injury, our review of the record shows that Mr. Chaffin presented sufficient evidence for a reasonable juror to conclude, at least, that Union Pacific (1) failed to provide reasonably safe working conditions and (2) also failed to provide him with adequate assistance while cleaning the switches. *See Rogers v. Mo. Pac. R.R. Co.*, 352 U.S. 500, 513 (1957) (explaining that FELA requires a case be submitted to a jury when "the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought").

15

With respect to breaching the duty to provide Mr. Chaffin with adequate assistance, the evidence shows that Mr. Forsythe failed to notify BNSF maintenance crews that Mr. Chaffin's train was arriving, and thus they were unable to assist Mr. Chaffin in clearing the ice and snow from the switches. Additionally, Mr. Forsythe had told Mr. Chaffin that he would send a van to transport Mr. Chaffin around the train yard, or to take him somewhere to warm himself. Mr. Chaffin, in reliance on this representation, proceeded down the track farther away from the train depot where he could have sought shelter from the elements when his foot began to numb.

Regarding Union Pacific's breach of the duty to provide reasonably safe working conditions, we acknowledge that the railroad cannot control weather conditions and that its employees are expected to work in adverse weather. However, Mr. Chaffin identified numerous exacerbating factors that would allow a jury to infer that Union Pacific breached its duty to provide reasonably safe working conditions: the switches were not cleared of ice and snow by a maintenance crew as a result of Mr. Forsythe's failure to notify BNSF that Mr. Chaffin's train had arrived; Mr. Forsythe changed Mr. Chaffin's assignment to a more lengthy, complicated one that involved cleaning multiple switches, despite the weather conditions; and Mr. Forsythe did not deliver on his promise to quickly provide a van to transport Mr. Chaffin between the switches. A reasonable jury

16

could have inferred that Mr. Forsythe knew or should have known that having a BNSF maintenance crew clean the switches, or at least providing a warm mode of transportation for Mr. Chaffin while he cleaned them, were necessary to ensuring that Mr. Chaffin worked in reasonably safe conditions.

### b. *Foreseeability*

Union Pacific also argues that even if it breached any duty, its negligence was legally insufficient, or perhaps was "in the [frigid] air," *Palsgraf v. Long Island R.R. Co.*, 248 N.Y. 339, 341 (N.Y. 1928) (internal quotation marks omitted), and that it could not have foreseen that such a breach would lead to Mr. Chaffin slipping and hurting his foot. It contends that Mr. Chaffin's argument depends on showing "that his foot injury – as opposed to the frostbite injury – was caused by the railroad's negligence . . . ." Aplt's Br. at 29. This position ignores the medical evidence submitted during the trial that Mr. Chaffin's slip outside was likely a result of the numbness in his foot caused by his exposure to the elements. Rec. vol. V, at 792-93. It also ignores FELA precedent, which clarifies that the railroad need not have foreseen the *specific* harm that resulted from its negligence to be held liable. *Gallick v. Baltimore & O.R. Co.*, 372 U.S. 108, 117-120 ("[R]easonable foreseeablility of harm is an essential ingredient of Federal Employers' Liability Act negligence. . . . [F]or a defendant to be liable for consequential damages he need not foresee the particular consequences of his

17

negligent acts: assuming the existence of a threshold tort against the person, then whatever damages flow from it are recoverable.").

It was proper to submit the case to the jury on these facts, since the jury could have inferred that Mr. Forsythe should have known that Mr. Chaffin was in distress from his repeated calls, or should have foreseen from the severe weather conditions alone that an injury, such as frostbite (which in turn caused him to fall and injure his foot) might result from exposure to the elements.

     *c.*    *Causation*

Finally, Union Pacific contends that Mr. Chaffin failed to present any evidence that his foot injury was caused by Union Pacific's negligence, arguing that he offered no evidence about what caused the slip that, in turn, caused the debilitating injury. This is without basis, as Mr. Chaffin presented testimony from his doctor, who explained that Mr. Chaffin's fall caused a twisting or inversion injury to his foot, and that if a person's foot goes numb, as happens with exposure to extreme weather conditions, an inversion injury is likely. There was ample evidence for the jury to find that the foot injury was caused by Mr. Chaffin's negligent exposure to the elements.

We conclude that Mr. Chaffin presented sufficient evidence on each element of his FELA negligence claim to submit his case to the jury. Therefore the district court properly denied Union Pacific's Motion for a New Trial or

18

Judgment as a Matter of Law.

### 2. Lost Future Wages Claim

We next consider Union Pacific's argument that Mr. Chaffin presented insufficient evidence on his lost future wages claim. We have explained that FELA entitles a claimant "to the difference between what he was able to earn prior to his injury and what he . . . could have earned thereafter." *Tayler v. Denver & R.G.W.R. Co.*, 438 F.2d 351, 354 (10th Cir. 1971). Union Pacific contends that Mr. Chaffin is not entitled to any lost future wages because he did not present sufficient evidence of what he earned prior to the injury. Specifically, Union Pacific points to the fact that he did not submit W-2s or testify as to the exact amount of his wages prior to the accident. Because of this lack of evidence, Union Pacific argues that the jury could not accurately calculate the extent of Mr. Chaffin's diminished earnings capacity.

Union Pacific's contention ignores that one of its own representatives testified at trial that conductors like Mr. Chaffin earn $75,000 to $80,000 each year. We acknowledge that W-2s or other evidence of actual past wages would have certainly assisted the jury in coming to a determination about what Mr. Chaffin would have earned but for the injury. For the years 1999 to 2003, however, when Mr. Chaffin was still attempting to work at the railroad, he detailed the specific amount of money that he lost after taking time off because of

19

his injury. Rec. vol. IV, at 573. Additionally, the record makes clear that Mr. Chaffin's earnings history may not have been particularly relevant to what he would have earned but for his injury. Mr. Stang testified that the earnings of all conductors had increased in the past few years. Rec. vol. III, at 476. Finally, it was within the jury's discretion to discount the ranges of conductors' earnings Mr. Stang provided, depending upon whether they credited Mr. Chaffin's testimony that he had planned to work as much as Mr. Stang once he finished raising his children. Our review of the record shows that Mr. Chaffin presented sufficient evidence for the district court to submit his lost future earnings claim to the jury.

## C.    Jury Instructions on Lost Future Wages

Union Pacific's final argument on appeal is that the district court erred by giving Instruction 23 to the jury, permitting them to award damages based on Mr. Chaffin's lost future wages. "[W]e review the district court's decision to give a particular jury instruction for abuse of discretion and consider the instructions as a whole de novo to determine whether they accurately informed the jury of the governing law." *United Stats v. Platte*, 401 F.3d 1176, 1183 (10th Cir. 2005) (internal quotation marks omitted).

Union Pacific objected to Instruction 23, particularly paragraph three, which allowed the jury to consider Mr. Chaffin's lost future wages claim. Union

Pacific concedes in its opening brief that this argument is a "corollary to its challenge to the sufficiency of Chaffin's claim for future lost wages." Aplt's Br. at 44, 46. Because we held that Mr. Chaffin presented "sufficient competent evidence" to prove his lost future wages claim, we hold that the district court properly instructed the jury on this element of damages as well. *Perlmutter v. U.S. Gypsum Co.,* 4 F.3d 864, 872 (10th Cir. 1993); *see Allen v. Wal-Mart Stores*, 241 F.3d 1293, 1297 (10th Cir. 2001) ("A party is entitled to an instruction on their theory of the case so long as the instruction is supported by competent evidence on the issue or theory supporting the instruction.") (citing *Perlmutter*, 4 F.3d at 871).

### III. CONCLUSION

For the reasons explained above, we AFFIRM the district court.

Entered for the court,

Robert H. Henry
Circuit Judge

21